Filed 5/7/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DAWN QUANG TRAN,<br><br>    Defendant and Appellant. | H036977<br>(Santa Clara County<br>Super. Ct. No. 205026) |

## I. INTRODUCTION

Defendant Dawn Quang Tran pleaded not guilty by reason of insanity (NGI) to a sexual offense and was committed to a state mental hospital for treatment. (Pen. Code, § 1026.5, subd. (a).)[1] Before the commitment expired, the Santa Clara County District Attorney filed a petition to extend it. (§ 1026.5, subd. (b).) At that time, the trial court was required to "advise the person named in the petition . . . of the right to a jury trial" (§ 1026.5, subd. (b)(3)) and conduct a jury trial "unless waived by both the person and the prosecuting attorney" (§ 1026.5, subd. (b)(4)).

At a pretrial hearing, the court met with defense counsel and the prosecutor in chambers to discuss procedural matters. At that time, both parties waived a jury trial off

---

[1] "Technically, once a defendant has been found not guilty by reason of insanity, he is no longer a criminal defendant, but a person subject to civil commitment." (*People v. Lara* (2010) 48 Cal.4th 216, 222, fn. 5.) We shall refer to such persons as defendants or NGIs rather than "committees" or "persons committed."

All unspecified statutory references are to the Penal Code.

the record.  Thereafter, defendant appeared at the bench trial after which the court sustained the petition and extended his commitment.

On appeal, defendant claims he was denied the right to a jury trial because the court failed to advise him of his right to a jury and erred in accepting counsel's waiver. He argues that the court was required to obtain his express, personal waiver.  The Attorney General counters that the bench trial was proper because, as a rule, counsel in NGI commitment cases has exclusive control over whether to have a bench or jury trial.

We conclude that section 1026.5 does not require an NGI's personal jury trial waiver.  Counsel may waive a jury at the NGI's direction or with the NGI's knowledge and consent, and counsel may also do so even over a defendant's objection, particularly when the defendant is not sufficiently competent to determine what is in his or her best interests.  To protect the right to a jury trial and ensure compliance with the statute, we further hold that when the court conducts a bench trial, the record must affirmatively establish the circumstances and validity of the jury.

## II. STATEMENT OF THE CASE

In 1998, defendant Tran pleaded not guilty by reason of insanity to lewd and lascivious conduct with a child under 14.[2]  He was committed to a state hospital for treatment, and his commitment has been extended three times.[3]  On April 1, 2011, before

---

[2]  The commitment offense occurred on June 18, 1997.  Defendant was visiting the home of a friend whose mother was babysitting.  At one point, the mother heard a child scream in another room.  The mother responded and found defendant in his underwear with his penis exposed standing over a four-year-old child whose pants and underwear had been pulled down.  When defendant lay down on top of the child, the mother pushed him off and told him to leave.  Later, overcome with guilt, defendant swallowed numerous sleeping pills and stabbed himself in the chest.

[3]  We take judicial notice of this court's unpublished opinions—*People v. Tran* (Jan. 28, 2009, H031976) and *People v. Tran* (July 26, 2010, H034743)—in which we affirmed the previous commitment extension orders.  (*Deschene v. Pinole Point Steel Co.*

2

the last extension expired, the district attorney filed a petition to extend it again. On May 12, 2011, after a bench trial, the court sustained the petition and extended defendant's commitment to June 19, 2013. Defendant appeals from the extension order.

We affirm the order.

### III. THE JURY WAIVER AND EXTENSION TRIAL

### A. WAIVER

Initially, the record on appeal did not reveal an advisement or express waiver. However, at the Attorney General's request, we directed the trial court to settle the record concerning an unreported, pretrial conference. (See Cal. Rules of Ct., rules 8.155 & 8.137.)

The court filed a settled statement. It reads, in pertinent part, "It was the custom and practice of [Honorable Gilbert T. Brown] to call the mental health calendar each Friday on the record. Prior to calling the calendar, all cases set were discussed in chambers. [¶] . . . . On April 29, 2011, Respondent's counsel, Thomas Sharkey, Deputy Public Defender, stated in chambers that Respondent was not willing to submit to an extension of his commitment to the Department of Mental Health and wanted a trial. He also stated, that he, counsel, was requesting a court trial rather than a jury trial. The People were in agreement with having a court trial. Trial was set for May 12, 2011 . . . ."

### B. THE EXTENSION TRIAL

At the extension trial, Dr. Eric Khoury, M.D., defendant's treating psychiatrist at Napa State Hospital (NSH), testified that defendant suffered from bipolar disorder, which has at times been severe and caused psychotic episodes. Dr. Khoury explained that the disorder is a chronic condition, and controlling the symptoms requires the continued use of medication. Dr. Khoury said that although defendant was currently taking his

---

(1999) 76 Cal.App.4th 33, 37, fn. 2, citing Evid.Code, § 452, subd. (d)(1); *Jaffe v. Pacelli* (2008) 165 Cal.App.4th 927, 930, fn. 1.)

medication, he vascillated between doing so and thinking he was cured. He said that defendant had not acknowledged that he would have to take medication for the rest of his life; rather, defendant said only that if medication is prescribed, he would take it. This and defendant's interest in being unconditionally released caused Dr. Khoury to be concerned that defendant would stop taking medication if he were not being closely supervised. Dr. Khoury opined that if defendant stopped, he would pose a danger to himself and others due to his mental disorder. He further argued that defendant would be ready for conditional release on outpatient status when he understood that he was not "cured," when he had developed the ability to recognize the signs of an onset of a manic episode, and when he understood that he had to take medication even when he felt better. Dr. Khoury noted that defendant currently was being evaluated for outpatient status and treatment, but that evaluation was not yet complete. At this time, NSH was not recommending outpatient status, and Dr. Khoury agreed that defendant was not ready for conditional release yet. Dr. Khoury opined that defendant's preference for unconditional release was unrealistic.

Defendant acknowledged that when he was first committed, he was mentally ill and had hallucinations. However, he believed that he was now fine. He said that if released, he would take his medication for the rest of his life. He admitted, however, that in the past, when he had felt fine and the doctor had refused to lower the dosage of his medication, he got angry and stopped taking it.

### IV.  AN NGI COMMITMENT AND EXTENSION

Under the statutory scheme for NGI commitments, a defendant who has been committed to a state hospital after being found NGI may not be kept in actual custody longer than the maximum state prison term to which he or she could have been sentenced for the underlying offense. (§ 1026.5, subd. (a)(1).) At the end of that period, the district attorney can seek a two-year extension by filing may petition alleging that the defendant

4

presents a substantial danger of physical harm to others because of his or her mental disease, defect, or disorder. (§ 1026.5, subds. (b)(1)-(2).) As noted, when the petition is filed, the court must advise the defendant of the right to a jury trial and then conduct a jury trial unless both parties waive a jury. (§ 1026.5, subds. (b)(3) & (4).)

## V. THE PARTIES' CONTENTIONS

As noted, defendant contends that the court erred in failing to give the required jury advisement, accepting counsel's jury waiver, and conducting a bench trial without obtaining his own express personal waiver. The Attorney General argues that the failure to advise and failure to obtain a personal waiver were not errors because once counsel was appointed, he assumed responsibility to advise defendant and enjoyed exclusive control over whether to have a bench or jury trial. Alternatively, the Attorney General argues that any alleged errors were harmless.

## VI. FAILURE TO ADVISE[4]

As noted, subdivision (b)(3) provides, "When the petition is filed, the court shall advise the person named in the petition of the right to be represented by an attorney and of the right to a jury trial."

The record reflects that the court did not directly advise defendant at the first hearing after the petition was filed; nor did the court do so at any time thereafter. This is understandable because when the petition was filed, defendant was in NSH; thereafter, defense counsel waived defendant's presence at all of the pretrial proceedings; the court did not order defendant's appearance for the purpose of an advisement; and defendant did not appear until the day of the bench trial. However, as we shall explain, the court's failure to advise does not compel reversal.

Before any judgment can be reversed for error under state law, it must appear that the error complained of "has resulted in a miscarriage of justice." (Cal. Const., art. VI,

---

[4] Hereafter, all unspecified subdivision references are to section 1026.5.

5

§ 13; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801.)  This means that reversal is justified "when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

Clearly counsel knew that defendant had the right to a jury trial because he expressly waived it.  Moreover, where, as here, counsel waives a defendant's presence at all pretrial hearings, effectively preventing a direct judicial advisement before trial, the court may reasonably expect counsel to discuss all pertinent matters that will arise or that have arisen in pretrial hearings, including the right to a jury trial and whether to have one. "Like all lawyers, the court-appointed attorney is obligated to keep her client fully informed about the proceedings at hand, *to advise the client of his rights*, and to vigorously advocate on his behalf.  [Citations.]  The attorney must also refrain from any act or representation that misleads the court.  (Bus. & Prof.Code, § 6068, subd. (d); Rules Prof. Conduct, rule 5–200(B).)" (*In re Conservatorship of Person of John L.* (2010) 48 Cal.4th 131, 151-152 (*John L.*), italics added.)  Absent a showing to the contrary, "[a] reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." (*People v. Carter* (2003) 30 Cal.4th 1166, 1211; *Conservatorship of Ivey* (1986) 186 Cal.App.3d 1559, 1566; e.g., *Conservatorship of Mary K.* (1991) 234 Cal.App.3d 265, 272 (*Mary K.*) [where no evidence to the contrary, court may presume counsel discussed jury waiver with client before waiving on client's behalf].)

Next, the record does not show that defendant was unaware of his right.  On the contrary, it suggests otherwise.  This was defendant's fourth extension trial.  In the appeal from his second extension order, defendant claimed that he was denied his right to a jury

6

trial because he did not personally waive it. (*People v. Tran, supra,* H031976.) Moreover, he had a jury trial on his third extension. (*People v. Tran, supra,* H034743.)

The record also does not show that defendant wanted a jury trial on the instant petition or that he did not authorize or agree to counsel's waiver or that he opposed or would have opposed counsel's waiver. "As a general rule, a stipulation of the attorney will be presumed to have been authorized by the client, as well in order to uphold the action of the court, as for the protection of the other party to the stipulation; but when the adverse party, as well as the court, is aware the attorney is acting in direct opposition to his client's instructions or wishes, the reason of the rule ceases, and the court ought not to act upon the stipulation, nor can the adverse party claim the right to enforce a judgment rendered by reason thereof." (*Knowlton v. Mackenzie* (1895) 110 Cal. 183, 188.)

Here, despite claiming the denial of a jury trial in a previous appeal and having a jury trial on a previous extension petition, defendant appeared in court and participated in the bench trial without objection or complaint. Under the circumstances, the record before us provides no basis to infer that defendant was unaware of his right to a jury trial or wanted a jury trial or that counsel overrode defendant's wish for a jury trial. Any such inferences would be pure speculation on our part.[5]

Last, we note that a single opinion by a psychiatric expert that the defendant is currently dangerous due to a mental disorder can constitute substantial evidence to

---

[5] However, if, in fact, defendant was unaware of his right to a jury trial and would have opposed or did oppose counsel's waiver, but the evidence to establish these facts lay outside the record on appeal, defendant had an alternative a remedy.

As a general rule, claims grounded in facts outside the record can be raised by habeas petition. (See *People v. Gray* (2005) 37 Cal.4th 168, 211; *In re Bower* (1985) 38 Cal.3d 865, 872.) A person improperly committed may resort to habeas corpus to challenge an involuntary civil commitment. (See Pen. Code, § 1473, subd. (a) ["Every person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint"]; see also *In re Michael E.* (1975) 15 Cal.3d 183.)

We observe that here defendant has not sought habeas relief.

support the extension of a commitment.  (*People v. Zapisek* (2007) 147 Cal.App.4th 1151*,* 1165; *People v. Bowers* (2006) 145 Cal.App.4th 870, 879.)

Dr. Khoury's testimony constituted strong evidence supporting the court's order, and defendant presented no opposing expert testimony.  Nor did he impeach Dr. Khoury in any respect.  Moreover, defendant does not now claim that Dr. Khoury's opinion was speculative or that his testimony does not constitute substantial evidence.  Under the circumstances, we do not find it reasonably probable defendant would have obtained a more favorable result had the court ordered his presence at a pretrial hearing and directly advised him on the record of his right to a jury trial on the record.  (*People v. Watson, supra,* 46 Cal.2d at p. 836; cf. *People v. McClellan* (1993) 6 Cal.4th 367, 377, 378 [failure to advise about sex registration requirement harmless].)**[6]**

## VII.  VALIDITY OF THE BENCH TRIAL

As noted, defendant contends that the bench trial was invalid because the court erred in accepting counsel's waiver.  He argues that subdivision (b)(4) requires an NGI's express, personal waiver.  According to the Attorney General, however, the court properly accepted counsel's waiver because he had exclusive control over whether to have a bench or jury trial.

### A. PERSONAL WAIVER

The federal and state Constitutions guarantee the right to a jury trial in criminal cases, and that right can be waived only by the defendant personally.  (U.S. Const., 6th

---

**[6]** We do not intend to suggest that it was improper or inappropriate for counsel to waive defendant's presence or that the court had a duty to order defendant's presence in order to directly advise him.  However, a direct advisement is not the only way for the court to ensure that an NGI is made aware of the right to a jury trial.  In our view, the practical difficulty in advising an NGI committed to a state hospital could easily be solved with an advisement and waiver form for the NGI read and sign.  (See *People v. Ramirez* (1999) 71 Cal.App.4th 519, 521-522 [waiver form proper substitute for judicial advisement].)

8

Amend.; Cal. Const., art. I, § 16; *People v. Collins* (2001) 26 Cal.4th 297, 304-308; *People v. Ernst* (1994) 8 Cal.4th 441, 446.) However, the right and the personal-waiver rule do not directly apply in NGI proceedings because such they are fundamentally civil, not criminal. (*People v. Powell* (2004) 114 Cal.App.4th 1153, 1157 (*Powell*); *People v. Superior Court* (*Williams*) (1991) 233 Cal.App.3d 477, 485 (*Williams*); cf. *People v. Rowell* (2005) 133 Cal.App.4th 447, 451 (*Rowell*) [constitutional right not applicable in civil proceedings to commit defendant as an sexually violent predator (SVP)]; *People v. Montoya* (2001) 86 Cal.App.4th 825 829-830 (*Montoya*) [same re proceeding to commit mentally disordered offender (MDO)]; *People v. Otis* (1999) 70 Cal.App.4th 1174, 1176 (*Otis*) [same].)

The federal Constitution also guarantees the right to a jury trial in civil cases, but that guarantee is not applicable to the states. (U.S. Const., 7th Amend. [right to a jury trial]; *McDonald v. City of Chicago* (2010) ___ U .S. ___, 130 S.Ct. 3020, 3034-3035, fn. 13 [not applicable to states]; *Jehl v. Southern Pac. Co.* (1967) 66 Cal.2d 821, 827 [same]; *Hung v. Wang* (1992) 8 Cal.App.4th 908, 927 [same].)

Likewise, the state Constitution guarantees the right to a jury trial in civil actions but only if the right existed at common law in 1850, when the Constitution was first adopted. (Cal. Const., art. I, § 16; *C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 8.) Civil commitment trials, such as an NGI trial, are "initiated by a petition independently of a pending action and are of a character unknown at common law." (*Rowell, supra,* 133 Cal.App.4th at p. 451; *In re Raner* (1963) 59 Cal.2d 635, 639.) Moreover, they are neither actions at law nor suits in equity and are instead considered "special proceedings." (*Montoya, supra,* 86 Cal.App.4th at p. 829; see *Tide Water Assoc. Oil Co. v. Superior Court* (1955) 43 Cal.2d 815, 822; *Le Louis v. Superior Court* (1989)

9

209 Cal.App.3d 669, 678; 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 65, subd. 20, pp. 139-140; Code Civ. Proc., §§ 21-23.)[7]

In a "special proceeding," the right to a jury trial is generally a matter of legislative grant, and not constitutional right. (*Corder v. Corder* (2007) 41 Cal.4th 644, 656, fn. 7 [state constitutional right not applicable in special proceedings]; *Cornette v. Department of Transp.* (2001) 26 Cal.4th 63, 76; *Agricultural Labor Relations Bd. V. Tex-Cal. Land Management, Inc.* (1987) 43 Cal.3d 696, 707; *Rowell, supra,* 133 Cal.App.4th at p. 452; *People v. Williams* (2003) 110 Cal.App.4th 1577, 1590 [no constitutional right to trial in civil commitment proceedings].)[8]

Generally, in special proceedings, the statutory right to jury trial may be waived by either a party or counsel *unless otherwise provided by statute*. (See *John L., supra,* 48 Cal.4th at p. 148.) Thus, we turn to the statutory language to see whether it clearly limits waivers to NGIs or excludes waivers by counsel. Subdivision (b)(4) requires the court to conduct a jury trial "unless waived by both the person and the prosecuting attorney." The

---

[7] Special proceedings include SVP commitment trials (*People v. Yartz* (2005) 37 Cal.4th 529, 535); competence trials (*People v. Masterson* (1994) 8 Cal.4th 965, 974 (*Masterson*)); trials extending a juvenile commitment (*In re Gary W.* (1971) 5 Cal.3d 296, 309); narcotics addict commitment trials (*In re De La O* (1963) 59 Cal.2d 128, 150; mentally retarded commitment trials (*Bagration v. Superior Court* (2003) 110 Cal.App.4th 1677, 1685).

[8] Even if the state Constitution did guarantee the right to a jury trial in an NGI commitment proceeding, defendant's claim would fail because the constitutional right "may be waived by the consent of the parties expressed as prescribed by statute," and the general rule is that where the constitutional right exists, it can be waived by either a party *or the party's attorney*. (Cal. Const., art. I, § 16 [right to jury trial]; see Code of Civ. Proc, § 631 [prescribing types of waiver]; *Zurich General Acc. & Liability Ins. Co. v. Kinsler* (1938) 12 Cal.2d 98, 105 (*Zurich*), overruled on other grounds in *Fracasse v. Brent* (1972) 6 Cal.3d 784, 792; [waiver by party or counsel]; *Cadle Co. v. World Wide Hospitality Furniture, Inc.* (2006) 144 Cal.App.4th 504, 510; *Conservatorship of Maldonado* (1985) 173 Cal.App.3d 144, 148; see also Code Civ. Proc., § 283, subd. (1) [counsel has authority to bind client in any of the steps of an action].)

10

question before us turns on the meaning of the term "the person." Does it refer literally and exclusively to "the person"; or does it more broadly include the person's attorney? That question is not new and has arisen in a number of cases under this and nearly identical commitment statutes. In every case, the court has adopted the broader view.

In *Otis, supra,* 70 Cal.App.4th 1174, the court dealt with section 2966, subdivision (b), which requires a jury trial when a person challenges his or her MDO status unless the jury is "waived by both the person and the district attorney." There, counsel waived a jury trial. The defendant objected and requested a jury trial, but at the time, he was delusional and said he was being sexually assaulted by invisible police. The court denied the request. (*Id*. at pp. 1175-1176.)

In upholding counsel's waiver, the court found that "nothing in the requirement that the waiver must be by 'the person' precludes the person's attorney from acting on his behalf" and noted that "[t]he Legislature did not say the waiver had to be made 'personally.' " (*Otis*, *supra*, 70 Cal.App.4th at p. 1176.) The court opined that if the Legislature had intended to require a personal waiver, it would have made its intent clear and unambiguous. (*Ibid*.)

The court further explained that "[s]ection 2966 concerns persons who have been found by the Board of Prison Terms to be mentally disordered. The Legislature must have contemplated that many persons, *such as Otis*, might not be sufficiently competent to determine their own best interests. There is no reason to believe the Legislature intended to leave the decision on whether trial should be before the court or a jury in the hands of *such a person*." (*Otis, supra*, 70 Cal.App.4th at p. 1177, italics added.)

In *Montoya, supra,* 86 Cal.App.4th 825, the court reached the same conclusion concerning identical language in section 2972, subdivision (a), which requires a jury trial on an MDO commitment extension unless waived "by the person and the district attorney." There too, counsel waived a jury. (*Id*. at pp. 828-829.)

11

The court concluded, as we have, that the constitutional waiver requirements in criminal cases were inapplicable because a commitment trial is fundamentally a civil proceeding. (*Montoya, supra,* 86 Cal.App.4th at pp. 829-830.) The court further observed that in civil actions, where there is a state constitutional right to a jury trial, and in ancillary criminal proceedings, where the right to a jury trial is statutory, not constitutional, a jury trial can be waived by either the client or counsel. (*Id*. at pp. 829-830.) Accordingly, the court looked to the waiver provision to see if it permitted or prohibited counsel to waive. (*Id*. at p. 830.)

In upholding counsel's waiver, the court followed *Otis.* It too noted that the statutory language did not expressly require a personal waiver or clearly preclude a waiver by counsel and agreed that the Legislature could not have intended to require a personal waiver and thereby deny counsel the authority to act on behalf of an incompetent MDO such as the MDO in *Otis*. (*Montoya, supra*, 86 Cal.App.4th at pp. 830-831.)

The court acknowledged that "a person could be mentally disordered for some purposes and not for others." (*Montoya, supra*, 86 Cal.App.4th at p. 831.) However, it noted that the defendant's mind was not functioning normally, and he had repeatedly and recently demonstrated poor judgment and aberrant behavior. In upholding counsel's waiver, the court found "no reason to believe that defendant was capable of making a reasoned decision about the relative benefits of a civil jury trial compared to a civil bench trial." (*Ibid*.)

This brings us to *Powell, supra,* 114 Cal.App.4th 1153, which is directly on point. There, the NGI objected to counsel's waiver and requested a jury. When the court denied the request, the defendant became so argumentative, belligerent, and disruptive that he had to be removed from the courtroom. On appeal, the defendant claimed that counsel's

12

waiver was ineffective because section 1026.5, subdivision (b)(4) required his personal waiver. (*Id*. at pp. 1157-1158.)

In rejecting this claim, the court cited *Otis* and noted that "[t]he Legislature, in enacting section 1026.5, did not say that the jury waiver must be 'personally' made by the NGI committee." (*Powell, supra,* 114 Cal.App.4th at p. 1159.) Moreover, mirroring the *Otis* court's view concerning incompetent persons, the court opined generally that "[a]n insane person who is 'a substantial danger of physical harm to others' [citation] should not be able to veto the informed tactical decision of counsel." (*Id*. at p. 1158.) The court pointed out that the defendant had been found insane twice, medical staff had diagnosed him with paranoid schizophrenia, and there was no evidence he had regained his sanity. The court further noted that the defendant had a history of violence, believed certain people should be killed, and sought release to do so. (*Id*. at p. 1158.) The court asked, "Can such a person intelligently invoke or waive the right to a jury trial? Is such a person competent to meaningfully understand who should make the determination of whether his commitment should be extended?" (*Ibid*.) The court answered, "Common sense dictates that appellant should not be able to veto his attorney's decision to waive a jury. The record demonstrates that appellant was suffering from a severe mental disorder. On the day of the purported demand for jury, appellant was medicated, experiencing mood swings, and was so belligerent and disruptive that he had to be removed from the courtroom." (*Ibid*.)

In support of its analysis, the *Powell* court cited *People v. Angeletakis* (1992) 5 Cal.App.4th 963 (*Angeletakis*). There, the defendant faced a trial to extend his NGI commitment and sought a preliminary determination of his competence. (See § 1368.) The court noted that section 1368 did not apply in civil proceedings and opined that an NGI did not have to be competent at a trial to extend his or her commitment. (*Id*. at pp. 967-968; *Juarez v. Superior Court* (1987) 196 Cal.App.3d 828, 931-932 [same]; cf.

13

*People v. Moore* (2010) 50 Cal.4th 802, 829 [same re trial on SVP commitment].) As the court explained, "Angeletakis will be confined and receive treatment for his mental condition whether his commitment is extended under section 1026.5 or such proceedings are suspended under section 1368. While we appreciate the distinction between mental competence to stand trial and dangerousness to others due to a mental disease, defect, or disorder, we think the interests of a person facing a commitment extension are adequately protected by competent counsel and the other procedural safeguards afforded him. Requiring the court to suspend proceedings until the committee is able to understand the nature of the proceedings and assist in the conduct of his 'defense' adds minimal protection in this context, especially when balanced against the administrative burdens involved." (*Angeletakis, supra,* 5 Cal.App.4th at pp. 970-971, fn. omitted.)

The *Powell* court read *Angeletakis* "for the principle that an NGI committee who is not mentally competent must act through counsel. If the person is not competent to waive jury at the extension trial, his or her attorney may waive jury on his or her behalf. *That is the case here*." (*Powell, supra,* 114 Cal.App.4th at p. 1158, italics added.)

Sections 1026.5, 2966, and 2972 use the same language to address the same subject. The unanimity of interpretation in *Otis*, *Montoya*, and *Powell* reflects the established rule that ordinarily "[w]ords or phrases common to two statutes dealing with the same subject matter must be construed in *pari materia* to have the same meaning." (*Housing Authority v. Van de Kamp* (1990) 223 Cal.App.3d 109, 116; *People v. Lamas* (2007) 42 Cal.4th 516, 525.)

We agree with those courts' view of the statutory language. It does not expressly require a "personal" waiver by the NGI. The term "the person" in the phrase "unless waived by both the person and the prosecuting attorney" (§ 1026.5, subd. (b)(4)) does not automatically or necessarily convey the notion that the only valid waiver is one "personally" made by the NGI. Nor does the waiver provision clearly reflect a legislative

14

intent to impose such a limitation or preclude waivers by counsel on behalf of an NGI. Finally, we too observe that the Legislature knows how to require a personal waiver, and in doing so, it has used clear and unambiguous language. (E.g., § 861, subd. (a)(1) [requiring personal waiver of statutory right to continuous preliminary examination]; § 997, subd. (b)(1) [same re waiver of presence at arraignment]; Welf. & Inst. Code, § 1801.5 [same re right to a jury in trial to extend juvenile detention].)

Furthermore, interpreting the language to exclude waivers by counsel results in consequences that, in our view, are illogical and anomalous and therefore, to be avoided. (*People v. Martinez* (1995) 11 Cal.4th 434.)

First, we note that for a variety of reasons, NGIs being treated for mental illness in state hospitals often choose not to appear until the day of trial, courts do not automatically order them transported to court for every pretrial hearing, and counsel routinely waive the NGIs' presence at those hearings which often involve technical, procedural, and scheduling matters. Such was the case here. Given these practical and logistical issues, counsel must be able to act on the NGI's behalf in his or her absence. We cannot conceive of a logical reason to prohibit counsel from waiving a statutory right to a jury trial at the NGI's direction or with the NGI's express authorization but in his or her absence. Doing so would compel the court to order the NGI's transportation and presence solely to secure a personal waiver. This is absurd, because, as noted, with a client's authorization, counsel can waive the more fundamental state *constitutional* right to a jury trial in civil actions.

We further note that competency to stand trial is not a prerequisite in a civil proceeding to commit a person who is dangerous due to mental illness. (E.g., *People v. Angeletakis, supra,* 5 Cal.App.4th at pp. 967-968 [NGI commitment]; *People v. Moore, supra,* 50 Cal.4th at p. 829 [SVP commitment].) However, a waiver "is the 'intentional relinquishment or abandonment of a known right.' [Citations.]" (*United States v. Olano*

15

(1993) 507 U.S. 725, 733; *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 521.) To be valid, the waiver of a statutory right must be knowing, intelligent, and voluntary. (*In re Hannie* (1970) 3 Cal.3d 520, 526-527; *People v. Charles* (1985) 171 Cal.App.3d 552, 559.) As *Otis, Montoya, and Powell* observe, some defendants, like the defendants in those cases, may be so delusional or otherwise affected by their mental disorders that they lack the capacity to know what is in their own best interests and make rational decisions. Under such circumstances, an NGI may not be able to knowingly and intelligently waive the right to a jury trial. If an NGI is incompetent and in a particular case counsel believes that a jury waiver is in the NGI's best interests, requiring that defendant's personal waiver would prevent a waiver by counsel and thereby undermine counsel's ability to protect the NGI's interests. Rather, it would mechanically require the court to conduct a jury trial or give the incompetent NGI veto power over counsel's informed determination.[9]

In our view, preventing counsel from waiving a jury at an NGI's direction or with an NGI's consent and preventing counsel from doing so on behalf of an incompetent NGI are anomalous consequences that would flow from interpreting the waiver provision literally to require a personal waiver. For that reason, we consider it unreasonable to infer such a restrictive legislative intent from the statutory language. (Cf. *Mary K., supra,* 234 Cal.App.3d at p. 271 [rejecting claim that counsel's waiver at conservatee's direction was ineffective because personal waiver was required].)

Defendant suggests that subdivision (b)(7) implicitly incorporates the constitutional personal waiver requirement in criminal cases. We disagree.

---

[9] The anomaly of forcing an incompetent person face a jury trial even when counsel concludes that it would be against the person's best interests would not arise from the personal waiver requirement in criminal cases because an incompetent defendant cannot be tried at all. (§ 1368; see also *Drope v. Missouri* (1975) 420 U.S. 162, 172.)

16

That subdivision provides, in relevant part, that the defendant "shall be entitled to the rights guaranteed under the federal and state Constitutions for criminal proceedings." (§ 1026.5, subd. (b)(7).) Every court that has analyzed the scope of this provision has concluded that it does not incorporate all federal and state constitutional procedural rights. (*Williams, supra*, 233 Cal.App.3d at pp. 485-488; *Powell, supra*, 114 Cal.App.4th at pp. 1157-1158; *People v. Haynie* (2004) 116 Cal.App.4th 1224, 1229-1230 (*Haynie*); *People v. Lopez* (2006) 137 Cal.App.4th 1099, 1008-1116 (*Lopez*); see *People v. Henderson* (1981) 117 Cal.App.3d 740, 746-748 (*Henderson*) [same conclusion re identical language in former Welf. & Inst. Code, § 6316.2, subd. (e)]; cf. with *Joshua D. v. Superior Court* (2007) 157 Cal.App.4th 549, 550-561 [distinguishing § 1026.5, subd. (b)(7) from Welf. & Inst. Code, § 1801.5, which grants juveniles "*all* the rights guaranteed under the federal and State Constitutions for criminal proceedings" in commitment extension trials (italics added)].)

In *Williams, supra*, 233 Cal.App.3d 477, the court opined that the subdivision simply "codifies the application of constitutional protections to extension hearings mandated by judicial decision. It does not extend the protection of constitutional provisions which bear no relevant relationship to the proceedings. [Citation.] Thus, for example, ex post facto principles are not applicable to extension proceedings. [Citation.] Neither is the privilege against self-incrimination applicable to court-ordered psychiatric examinations. [Citations.]." (*Id.* at p. 488; accord, *Lopez, supra,* 137 Cal.App.4th at pp. 1111-1115; cf. *Henderson, supra,* 117 Cal.App.3d at pp. 746-748.) The court held that the provision also did not incorporate constitutional protection against double jeopardy. The court reasoned that double jeopardy prohibitions were inapplicable because they are designed to protect a person from being criminally prosecuted more than once for the same offense. "Recommitment proceedings do not adjudicate an offense, thus the bar of

double jeopardy has no meaningful application to extension proceedings." (*Williams, supra*, 233 Cal.App.3d at pp. 485-486, 488.)[10]

In *Powell, supra*, 114 Cal.App.4th 1153, the court agreed with *Williams* that subdivision (b)(7) does not incorporate all constitutional procedural safeguards and held that the subdivision did not incorporate the constitutional personal waiver requirement in criminal cases. As discussed above, the court opined that an incompetent NGI must act through counsel, who may then waive a jury on his or her behalf. (*Powell, supra,* 114 Cal.App.4th at pp. 1158-1159.)

We agree with *Powell.* The absurd and anomalous consequences that would result from interpreting subdivision (b)(4) to require a personal waiver and exclude waivers by counsel would likewise result from interpreting subdivision (b)(7) to do so. Indeed, subdivision (b)(3) provides the right to counsel, a jury trial, and criminal discovery. Subdivision (b)(7) reflects an intent to protect a defendant's interests by providing additional procedural safeguards relevant to the proceedings. Simply put, it makes no

---

[10] In *Williams*, the court explained that "Penal Code section 1026.5 was enacted in 1979, as emergency legislation in response to the California Supreme Courts decision of *In re Moye* [(1978) 22 Cal.3d 457]. Prior to *In re Moye*, individuals committed to state hospitals after having been acquitted by reason of insanity were committed for an indefinite period of time. *In re Moye* concluded that equal protection principles mandated that such individuals be released after they had been committed for a period of time equal to the maximum state prison sentence which they could have received for the underlying offense. Faced with the imminent release of many potentially dangerous individuals, the legislature adopted Penal Code section 1026.5 to provide for a maximum term of commitment, together with the possibility of successive two-year recommitments for dangerous individuals. At the same time, the statutes relating to mentally disordered sex offenders ('MDSO') were amended to provide for virtually identical procedures." (*Williams, supra*, 233 Cal.App.3d at p. 487-488, fn. omitted.)

We have taken judicial notice of the legislative history of section 1026.5, which confirms *Williams'* summary. (See Evid. Code, § 452, subd. (c).)

We further note that in *Lopez, supra*, 137 Cal.App.3d 1099, the court expanded on the legislative history of section 1026.5 as well as *Williams'* view that it merely codified judicial decisions.

sense to interpret a provision designed to provide *additional* protection in a way that reduces counsel's ability to protect the interests of an incompetent NGI when, in counsel's view, waiving a jury trial would do so. With this in mind, we do not find that subdivision (b)(7) clearly reflects a legislative intent to incorporate the personal waiver requirement applicable in criminal cases.

We agree with *Powell* for two other reasons. Even in a criminal prosecution, where a defendant must personally waive the state and federal constitutional rights to a jury trial, there is no requirement that a *statutory* right to a jury determination of certain issues be personally waived. (*People v. French* (2008) 43 Cal.4th 36, 46-47; see *Montoya, supra,* 86 Cal.App.4th at p. 829.) Thus, for example, a defendant need not personally waive the statutory right to a jury on prior prison term allegations (*People v. Vera* (1997) 15 Cal.4th 269, 278, abrogated on another point in *Apprendi v. New Jersey* (2000) 15 Cal.4th 269, 278); the statutory right to have jury determine sentence enhancement allegations (*People v. Wims* (1995) 10 Cal.4th 293, 309, overruled on another point in *People v. Sengpadychith* (2001) 26 Cal.4th 316, 326); the statutory right to have jury determine competence to stand trial on criminal charges (*Masterson, supra*, 8 Cal.4th at p. 972); or the statutory right to have same jury determine current charges and prior allegations (*People v. Saunders* (1993) 5 Cal.4th 580, 589, fn. 5). (See also *People v. Hinton* (2006) 37 Cal.4th at 839, 874-875 [statutory right to a separate proceeding on the prior-murder-conviction special-circumstance allegation].)

Second, subdivision (b)(4) specifically deals with the waiver of a jury trial and it does not expressly require a personal waiver or prohibit waiver through counsel. Subdivision (b)(7), on the other hand, is a general statute and does not specifically refer to any particular rights or the waiver of rights.

It is a settled rule that "[a] specific provision relating to a particular subject will govern a general provision, even though the general provision standing alone would be

19

broad enough to include the subject to which the specific provision relates. [Citation.]" (*People v. Tanner* (1979) 24 Cal.3d 514, 521.) Under the circumstances, we doubt the Legislature intended the general subdivision (b)(7) to add by implication a personal waiver requirement that it did not expressly include in the specific subdivision dealing with the waiver of a jury trial.[11]

In sum, when construing statutes, "we may not under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used." (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349, quoting *Manufacturers Life Ins. Company v. Superior Court* (1995) 10 Cal.4th 257, 274; accord *Estate of Griswold* (2001) 25 Cal.4th 904, 917.) Nor may we insert requirements or limitations that would cause the statute to conform to a presumed intent that is not otherwise manifest in the existing statutory language. (*Citizens to Save California v. California Fair Political Practices Com.* (2006) 145 Cal.App.4th 736, 747-748, *Tain v. State Bd. of Chiropractic Examiners* (2005) 130 Cal.App.4th 609, 617.)

Given our analysis of the statutory language, policy considerations, and potential consequences, we must decline to insert a personal waiver requirement into section 1026.5 Rather, we conclude that under subdivision (b)(4), counsel may waive a jury at an NGI's direction, with an NGI's knowledge and consent, or, as in *Powell*, on behalf of an incompetent NGI.[12]

---

[11] Even if subdivision (b)(7) incorporated the personal waiver requirement applicable in criminal cases, the requirement, it would still represent only a statutory requirement, not a constitutionally compelled requirement, and therefore, any statutory violation would be subject to review under the *Watson* test for harmless error.

[12] In the latter situation, we believe that counsel may do so even over the objection of an incompetent defendant. (E.g., *Powell, supra*, 114 Cal.App.4th at pp. 1156, 1158-1159; cf. *Otis, supra*, 70 Cal.App.4th at pp. 1176-1177 [waiver over objection of incompetent MDO]; *Masterson, supra,* 8 Cal.4th 965, 972 [waiver over objection of defendant whose competence has been called into question].)

20

Although we conclude that the waiver provision is broad enough to permit waivers by counsel, it does not necessarily follow, as the Attorney General claims, that the waiver provision gives counsel exclusive control over whether to have a bench or jury trial.[13] To determine it does, we return to subdivision (b)(4).

## B. SCOPE OF COUNSEL'S CONTROL

The statutory language "unless waived by both the person and the prosecuting attorney" does not expressly confer exclusive control; nor does it expressly or implicitly bar NGI's from controlling the decision. Moreover, the waiver provision must be read together with the advisement provision (see *Los Angeles County Metropolitan Transp. Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1106-1107), and together, they do not reasonably suggest a legislative intent to confer exclusive control or bar NGIs from making the decision. On the contrary, the two provisions contemplate that NGIs can make the decision and expressly provides for them to do so.

Specifically, subdivision (b)(3) requires the court to advise "the person named in the petition . . . of the right to a jury trial." This language imposes a mandatory duty on the court.[14] (*Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538, 542 ["shall" typically construed as mandatory; e.g., *People v. Tindall* (2000) 24 Cal.4th 767, 772.) It reflects a legislative intent to judicially ensure that "the person" knows that he or she has the right to a jury trial.

---

[13] The court's custom and practice of obtaining waivers from counsel in chambers off the record may well be based on the view that in every commitment proceeding, counsel has such exclusive control. Indeed, if that were the case, then the court's practice represents practical, efficient, and convenient way to resolve the jury issue. However, as we shall explain, that is not the case.

[14] We mean "mandatory" in its obligatory, rather than jurisdictional, sense as in a required, rather than discretionary, action. (See *Morris v. County of Marin* (1977) 18 Cal.3d 901, 908 [discussing distinction].)

We must presume that the Legislature intended the advisement to perform a meaningful and useful function.  (See *Clements v. T.R. Bechtel Co.* (1954) 43 Cal.2d 227, 233.)  The purpose and function appear in the waiver provision, which requires jury trial unless waived by "the person."  Although, subdivision (b)(4) must be construed to permit a waiver by "the person's" attorney, the phrase unambiguously refers to a waiver by the NGI.  Thus, the purpose and function of the required advisement are self-evident:  to inform the NGI of the right to a jury trial so that he or she can decide whether to waive it.  (See *People v. Barrett* (2012) 54 Cal.4th 1081, 1109 (*Barrett*) [a jury advisement enables person to comprehend and control decision to "request a jury trial"]; *People v. Koontz* (2002) 27 Cal.4th 1041, 1071 [purpose of standardized *Faretta* advisements is "to ensure a clear record of a knowing and voluntary waiver of counsel"]; § 1016.5, subd. (d) [required advisement of potential immigration consequences intended to inform decision of whether to waive rights and enter plea].)

We observe that if the Legislature had intended to give counsel exclusive control, it could have done so easily and clearly by requiring a jury trial unless waived by "the person's *attorney*" just as it specified a waiver by the "district *attorney*."  (Cf. § 2966, subd. (b) [requiring hearing within specified time unless waived by "petitioner or his or her counsel"].)  Conversely, we doubt the Legislature would have clouded such an intent by requiring the court to advise "the person" and further requiring a jury trial unless waived by "the person."  Moreover, if that had been the Legislature's intent, an advisement would serve no practical or meaningful function, and there would have been no need to make the advisement mandatory.  For this reason, it is not reasonable to interpret the provision to confer exclusive control because it would effectively render the advisement provision meaningless, statutory surplusage.  (See *McCarther v. Pacific Telesis Group* (2010) 48 Cal.4th 104, 110 [courts should avoid interpretation rendering part of the instrument surplusage].)

22

In short, just as we decline to limit the phrase "unless waived by the person" by inferring that only an NGI can waive a jury trial, so too we decline to limit the phrase by inferring that counsel has exclusive control over the decision.

We acknowledge the nonstatutory, judicially recognized rule that "in both civil and criminal matters, a party's attorney has general authority to control the procedural aspects of the litigation and, indeed, to bind the client in these matters"; in other words, "counsel is captain of the ship." (*In re Horton* (1991) 54 Cal.3d 82, 94, 95; *Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 403-404.) We further note that in upholding counsel's waiver in *Otis,* the court cited *Zurich, supra,* 12 Cal.2d 98 for the general proposition that "in civil cases, an attorney has 'complete charge and supervision' to waive a jury." (*Otis*, *supra*, 70 Cal.App.4th at p. 1176.) However, we conclude that the "captain of the ship" rule in civil litigation does not govern whether counsel has exclusive authority to waive a jury in NGI proceedings.

In *Zurich, supra*, 12 Cal.2d 98, the court held that counsel's insistence on a jury trial did not constitute good cause for firing him and thus bar him from later seeking a share of her judgment. Citing the general rule, the court concluded that the attorney had the right and authority to insist on a jury trial. (*Id*. at pp. 105-106.)

Although *Zurich* did not involve a jury waiver, the court cited a number of cases and authorities, including *Shores Co. v. Iowa Chemical Co.* (1936) 222 Iowa 347 [268 N.W. 581] (*Iowa*). There, the defendant claimed that counsel lacked the authority to waive a jury by stipulation. However, the court explained that ordinarily counsel has implicit authority to enter binding stipulations on procedural matters. It then noted that the defendant was aware of counsel's waiver at the time, he had made no effort to set it aside, and he did not seek a jury trial until long after the stipulation had been entered. Given these circumstances, the court held that the defendant had failed to show that counsel lacked authority to waive a jury trial. (*Id*. at p. 583.)

23

Although *Zurich* and the *Iowa* case recognized counsel's authority to request or waive a jury in typical civil litigation, neither case involved a "special proceeding" in which the state seeks to involuntarily commit a person to a mental hospital for treatment. Moreover, neither case addressed whether counsel had such authority in a "special proceeding"; and neither case involved a statute that expressly required a jury advisement and jury trial unless waived by the person.

" 'It is axiomatic,' of course, 'that cases are not authority for propositions not considered.' (*People v. Jones* (1995) 11 Cal.4th 118, 123, fn. 2, quoting *People v. Gilbert* (1969) 1 Cal.3d 475, 482, fn. 7.) Thus, these cases do not support a conclusion that in NGI proceedings, the "captain of the ship" rule gives counsel exclusive control over whether to waive a jury trial.

*Masterson, supra,* 8 Cal.4th 965 is a pertinent case on the issue because it involved a special proceeding to determine whether the defendant was competent to stand trial on criminal charges. (§§ 1368-1370.) There, counsel stipulated to an 11-person jury over the defendant's objection. In upholding counsel's authority to do so, the court more broadly concluded that in competency trials, counsel has exclusive control over the jury issue. The court noted the "captain of the ship" rule but did not base its conclusion on it. (*Masterson, supra,* 8 Cal.4th at pp. 969-970.) Rather, the court expressly based its conclusion on "an examination of the nature of competency proceedings as well as the jury trial right at issue." (*Id.* at p. 971.)

The court explained, "The sole purpose of a competency proceeding is to determine the defendant's present mental competence, i.e., whether the defendant is able to understand the nature of the criminal proceedings and to assist counsel in a rational manner. [Citations.] Because of this, the defendant necessarily plays a lesser personal role in the proceeding than in a trial of guilt. How can a person whose competence is in

24

doubt make basic decisions regarding the conduct of a proceeding to determine that very question?" (*Masterson, supra*, 8 Cal.4th at p. 971.)

The court concluded that when doubt is raised about a defendant's competence, the defendant is assumed to be unable to act in his or her own best interests. For that reason, the defendant must act through counsel, and counsel has exclusive control over the conduct of the proceedings, including whether to request a jury trial. (*Masterson, supra*, 8 Cal.4th at pp. 971, 973; see *People v. Hill* (1967) 67 Cal.2d 105, 114, fn. 4 [no error in failing to advise defendant of right to jury in competence trial because counsel decides whether to have a jury trial].)

Under *Masterson*, therefore, if counsel has exclusive control, counsel derives it not so much from the "captain of the ship" rule but from the nature of NGI proceedings and the jury right at issue.

More recently, in *Barrett, supra,* 54 Cal.4th 1081, the Supreme Court provided further guidance when it decided whether counsel had exclusive control in a proceeding to commit a mentally retarded person who is dangerous. (Welf. & Inst. Code, § 6500.)[15]

In *Barrett*, the court conducted a bench trial and committed the defendant. (*Barrett, supra,* 54 Cal.4th at pp. 1088-1092.) On appeal, she claimed that the Constitution provided the right to a jury trial and required a jury advisement and personal waiver. (*Id.* at p. 1093.) Although the statute did not provide the right to a jury trial, the

---

[15] The *Barrett* court noted that at all pertinent times, the statutory scheme had used the terms "mentally retarded" and "mental retardation." The court acknowledged that subsequent "legislative enactments and proposed amendments replace references to 'mental retardation' under section 6500 et seq. with such terms as 'developmental disability' and 'intellectual disability.' [Citation.]" (*Barrett, supra*, 54 Cal.4th at p. 1088, fn. 2.) However, to avoid confusion, the court used the original terminology.

To avoid confusion when discussing *Barrett* and its application, we shall also use that outmoded terminology.

At our request, the parties briefed the impact of *Barrett*, if any, on the issues raised in this case.

25

Supreme Court agreed that constitutional considerations warranted recognizing an implied statutory right to a jury trial. (*Id*. at pp. 1097, 1100.) However, the court rejected advisement and waiver requirements because it found that counsel had exclusive control over whether to waive a jury trial. In reaching this conclusion, the court relied primarily on *Masterson.*

The court explained that mental retardation is a developmental disability that originates when an individual is a minor and continues, or can be expected to continue, indefinitely, and constitutes a " 'substantial disability for that individual.' " (*Barrett, supra*, 54 Cal.4th at p. 1103.) Moreover, for purposes of a commitment under section 6500, mental retardation involves " ' " '*significantly subaverage general intellectual functioning* existing concurrently with deficits in adaptive behavior,'and appearing in the 'developmental period.' " ' [Citations.]" (*Ibid*., italics in *Barrett*) The court opined that "the significant cognitive and intellectual deficits that the condition entails, which appear early in life and never recede, affect the ability to 'make basic decisions' regarding the conduct of the section 6500 proceeding. [Citation.] Such an individual thus plays a limited 'personal role' in the case, and must rely on counsel to decide all tactical and procedural matters, such as whether to exercise the jury trial right." (*Id*. at pp. 1103-1104.)

The court rejected a claim that this approach "improperly 'presumes' that a person is mentally retarded before the fact finder has decided the issue." (*Barrett, supra*, 54 Cal.4th at p. 1104.) The court noted that a commitment petition is filed at the request of "a responsible and interested party (e.g., parent, conservator, correctional or probation official, or regional center director), who presents specific information (reasons) for supposing that the person is mentally retarded and dangerous, in need of treatment, and eligible for commitment. The significance of this request, and its role in providing a foundation for the petition and commitment process, is underscored by the verification

requirement. (§ 6502.) . . . [¶] Second, where a section 6500 petition is filed, the trial court is entitled to a written report prepared by, or at the behest of, the director of the regional center, following an examination of the alleged mentally retarded person. (§ 6504.5.) Regional centers specialize in assessing and assisting mentally retarded and other developmentally disabled persons on an individual basis. [Citation.] Thus, the regional center report obviously serves as a professional pretrial evaluation of the person's history, condition, and behavior, and includes informed recommendations on treatment and placement, including any interim placement pending the hearing. . . . . [¶] In light of these principles and authorities, we conclude that someone like Barrett, who is alleged to be mentally retarded and dangerous under section 6500, is not in a position to personally assert or waive the right to jury trial, to sufficiently comprehend the jury trial advisement, or to override the views of counsel on the subject. Sole control over such tactical and procedural decisions rests with counsel, whether or not the client has been consulted or objects." (*Barrett, supra*, 54 Cal.4th at pp. 1104-1105.)

*Masterson* and *Barrett* establish that in certain types of commitment proceedings, the defendant's alleged mental state—e.g., incompetency and mental retardation— disables him or her from making reasoned decisions about what is in his or her best interests, including whether to request or waive a jury trial. In other words, it is reasonable to categorically assume that such defendants lack the capacity to make a rational decision about a jury trial. For that reason, they must act through counsel, and counsel has exclusive control over the jury issue.

The Attorney General cites *Masterson* to support the claim that counsel has exclusive control in NGI proceedings. Presumably, the argument is that, like defendants whose competence has been questioned or persons diagnosed with mental retardation, NGIs are categorically unable to make reasoned decisions, and therefore counsel must be

27

able to decide the jury issue. We reject this argument and find the Attorney General's reliance on *Masterson* to be misplaced.

First, there are significant differences between an NGI extension trial and the proceedings in *Masterson* and *Barrett.* The purpose of a competency trial is to resolve actual doubt concerning the defendant's mental capacity to understand the proceedings and cooperate with and assist counsel. (*People v. Lewis* (2008) 43 Cal.4th 415, 524.) Thus, as *Masterson* holds, once a defendant's competency is doubted, counsel has control over whether to request a jury for the competency trial.

The proceeding in *Barrett* did not involve a determination of competency but whether a mentally retarded person is dangerous. However, as *Barrett* explains, mental retardation in this context represents a permanent developmental disability involving significant cognitive and intellectual deficits. For this reason, the court treated the allegations and supporting documentation that person is mentally retarded like doubt concerning a defendant's competency to stand trial. In other words, the mentality of persons in both contexts is comparable, both may be assumed to be incapable of determining their own best interests, and therefore the scope of counsel's authority should be the same.

Unlike a competency trial, an NGI extension trial does not involve a determination of competency. Its purpose is to determine whether an NGI is currently dangerous due to a severe mental disorder that is not in remission. (§ 2970.) To be sure, that is the same purpose of a trial to commit a dangerous mentally retarded person. However, the similarity of purpose does not mean that the scope of counsel's authority should be the same because the mental capacity of the persons in each context is different. More specifically, although it may be reasonable to categorically assume that mentally retarded persons lack the capacity to determine their own best interests, it is not reasonable to make that categorical assumption about NGIs. *Barrett* makes this precise point.

28

Concerning the capacity to function in a competent manner, and specifically to comprehend a jury advisement and rationally control the jury decision, the *Barrett* court distinguished those diagnosed with a mental disease, defect, or disorder from those diagnosed with mental retardation.

In *Barrett*, the defendant claimed that the Constitution required a jury advisement and personal waiver under principles of equal protection. She noted that patients facing an extended commitment under the Lanterman-Petris-Short (LPS) Act (Welf. & Inst. Code, § 5000 et seq.) because they posed a danger due to their mental disease, defect, or disorder rendered were statutorily entitled to such procedural safeguards. (*Barrett, supra*, 54 Cal.4th at p. 1106; see Welf. & Inst. Code, § 5302.) Because she and LPS patients were similarly situated, she claimed the right to those safeguards.

In rejecting her claim, the court explained that persons subject to commitment under the two schemes are not "similarly situated as to the ancillary purpose that an express jury trial advisement, and an express personal waiver, purportedly serve," namely enabling the person to comprehend and control the decision to waive a jury trial. (*Barrett, supra*, 54 Cal.4th at p. 1108.) What distinguished persons under the two schemes was their "distinct 'mentality' "—i.e., mental retardation versus mental illness. (*Ibid*.) The court explained that "[m]ental illness and related disorders are said to be conditions that may arise suddenly and, for the first time, in adulthood. [Citation.] The LPS Act process itself assumes that the need for treatment may be temporary, and that disabling mental disorders may be intermittent or short-lived. [Citation.] [¶] In addition, because of the complexity of human behavior, and the lack of a long history in every case, mental illness and related disorders may be difficult to diagnose. [Citations.] Where present, however, ' "mental illness 'often strikes only limited areas of functioning, leaving other areas unimpaired, and consequently . . . *many mentally ill persons retain the capacity to function in a competent manner.*' " ' [Citation.] [¶] These characteristics

29

suggest that the mental conditions that create eligibility for an extended 180-day LPS Act commitment, though they include imminent dangerousness, *do not necessarily imply incompetence or a reduced ability to understand, and make decisions about, the conduct of the proceedings*. Hence, nothing compels the conclusion that such LPS Act patients will not benefit by the statutory right to a jury trial advisement set forth in section 5302. By contrast, in the case of persons alleged to be mentally retarded and dangerous under section 6500, the commitment process itself raises substantial doubts about their cognitive and intellectual functioning sufficient to limit the personal and procedural role they play. It follows that the two groups are not similarly situated as to the function that Barrett implies an advisement like section 5302 serves—*comprehending and controlling the decision whether to request a jury trial*. Thus, any disparate statutory treatment with respect to jury trial advisements does not deprive persons like Barrett of equal protection of the law." (*Barrett, supra*, 54 Cal.4th at pp. 1108-1109, first italics in *Barrett*, second italics added.)[16]

The court's discussion recognizes that unlike defendants whose competence is questioned or persons diagnosed with mental retardation, those suffering from a mental illness can comprehend and control the decision to waive a jury trial. In this regard, *Barrett's* view mirrors the implicit legislative findings underlying the statutory requirements of an advisement and jury trial unless waived that an NGI can decide whether to waive a jury trial. Moreover, these requirements further distinguish *Masterson* and *Barrett* because the statutes in those cases do not mandate an advisement or jury trial unless waived; rather, a jury trial must be demanded. (*Barrett, supra,* 54

---

[16] In 1981, the court in *Cramer v. Gillermina R.* (1981) 125 Cal.App.3d 380 similarly held that because mental illness and mental retardation are separate and distinct conditions which require different treatment and/or habilitation," their differing statutory schemes did not violate the guarantee of equal protection. (*Id*. at pp. 387-388; accord, *People v. Quinn* (2001) 86 Cal.App.4th 1290, 1294-1295.)

Cal.4th at p. 1097; *People v. Rojas* (1981) 118 Cal.App.3d 278, 287; *People v. Hill*, *supra*, 67 Cal.2d at p. 114 [under former § 1368]; e.g., *People v. Superior Court* (*McPeters*) (1985) 169 Cal.App.3d 796, 798.)

Finally, *Barrett's* view that having a mental disorder does not categorically render one incapable of determining what is in his or her own best interests is not particularly unique or unprecedented. In *John L., supra,* 48 Cal.4th 131, the court observed that despite having mental disorders, conservatees are not, by reason of their conservatorship, automatically considered incompetent to waive their rights. (*Id*. at p. 153.) In *In re Qawi* (2004) 32 Cal.4th 1, the court opined that "[a]lthough an MDO must be determined to have a 'severe mental disorder,' commitment for a mental disorder does not by itself mean that individuals are incompetent to participate in their own medical decisions. [Citations.]" (*Id*. at p. 24.) In *People v. Wolozon* (1982) 138 Cal.App.3d 456, the court held that despite a finding of NGI and evidence of a mental disorder that rendered the defendant dangerous, the defendant had the right to waive counsel and represent himself. (*Id*. at pp. 460-461.) Similarly, in *People v. Williams, supra,* 110 Cal.App.4th 1577, the court recognized that a defendant has the statutory right to waive counsel and represent himself in a trial to extend his MDO commitment. (*Id*. at pp. 1587-1592.)

In addition to *Masterson*, the Attorney General relies on *Otis, Montoya,* and *Powell* as well as *People v. Givan* (2007) 156 Cal.App.4th 405 (*Givan*) to support her claim that counsel has exclusive control.

*Otis, Montoya,* and *Powell* must be viewed in light of their particular facts and the issues raised in them. (See *Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 ["[l]anguage used in any opinion is of course to be understood in the light of the facts and the issue then before the court"].) As noted, in *Otis*, the defendant was delusional, and the court upheld counsel's jury waiver over the defendant's objection, opining that the defendant was not capable of making a reasoned decision. (*Otis*, *supra*, 70 Cal.App.4th at

31

pp. 1175-1176.) In *Montoya,* the court also upheld counsel's waiver, noting that the defendant's mind was not functioning normally, and he, like the defendant in *Otis*, was not capable of making a reasoned decision. (*Montoya, supra*, 86 Cal.App.4th at p. 831.) Likewise, the court in *Powell* upheld counsel's waiver over the defendant's objection because the defendant was medicated and his disruptive conduct demonstrated his incompetence. (*Powell, supra,* 114 Cal.App.4th at p. 1158.)

Given the particular facts concerning the mental state of these defendants, we read these cases for the proposition that when it reasonably appears that an MDO or NGI reasonably is incapable of determining whether a bench or jury trial is in his or her best interests, he or she must act through counsel, and counsel has exclusive authority to decide even over an objection. In this regard, the cases reflect the *Masterson-Barrett* rationale for recognizing counsel's exclusive authority in proceedings to determine competency and the dangerousness of a mentally retarded person. In our view, these cases should not be read more broadly to hold that counsel controls the jury issue regardless of whether the MDO or NGI is competent. This is especially so because none of these cases discussed the purpose and function of the mandatory jury advisement.

The Attorney General's reliance on *Givan*, *supra*, 156 Cal.App.4th 405 is also misplaced. There, the NGI instructed his attorney to make sure he did not have to attend the extension proceedings, and to this end, the NGI signed a declaration stating that he had discussed his rights and had agreed to an extension of his commitment. He also requested that his attorney be permitted to appear and present this waiver. Counsel did so, and the court accepted it. On appeal, the defendant claimed he was denied a jury trial because the statute required his express, personal waiver. The court held that a personal waiver was not required and that the defendant's express instructions to his attorney implicitly incorporated a jury waiver. (*Givan, supra*, 156 Cal.App.4th at pp. 409-411.)

32

*Givan* does not suggest that counsel exclusively controls the jury decision in every case; nor does it undermine our statutory analysis or reading of *Powell*.[17]

---

[17] The Attorney General also cites *People v. Fisher* (2006) 136 Cal.App.4th 76. In *Fisher*, the MDO's counsel waived a jury trial, but the MDO objected and then moved to discharge counsel and represent himself. The court granted the request. After a jury trial, the MDO's commitment was extended. On appeal, he claimed that in honoring counsel's jury waiver, the court forced him to waive his right to have *counsel* represent him at a jury trial. In rejecting this claim, the court first asserted that in *Otis, supra*, 70 Cal.App.4th 1174, "we held that counsel for a person challenging an MDO certification may waive jury trial without the consent of his client." (*Fisher, supra*, 136 Cal.App.4th at p. 81.) The court then opined that the MDO "was not 'forced' to do anything and the trial court went to great lengths to be fair to him. First, it was not required to allow appellant to represent himself. [Citation.] Second, it was not required to allow appellant to successfully reassert the right to jury trial after a valid waiver by counsel. Third, the record shows that the trial court assisted appellant in the cross-examination of the People's witnesses and in the presentation of his case." (*Ibid*.) Last, the court stated, "We decline the invitation to overrule *Otis* and continue to believe that it was correctly decided. The instant case could serve as a paradigm for why a person with a severe mental disorder should not be allowed to veto his attorney's decision to waive jury, waive the right to counsel, and insist on self-representation. As indicated, appellant has made some poor choices but his perceived dilemma is self-created." (*Ibid*.)

We agree that *Otis* was properly decided. However, insofar as *Fisher* suggests that counsel can waive a jury over a defendant's objection in *every* case, regardless of whether the MDO is competent, *Fisher's* view of *Otis* ignores the facts in *Otis* and is overbroad. Moreover, although the result in *Fisher* is reasonable because any error would have been harmless under *Watson*—i.e., it is not reasonably probably the jury would have returned a more favorable verdict had counsel represented the MDO—we question the *Fisher* court's brief and summary analysis. Simply put, if, as the trial court implicitly found, the MDO was sufficiently competent to waive his statutory right to counsel and represent himself (*People v. Williams, supra,* 110 Cal.App.4th at p. 1591 [right of self-representation in MDO proceeding is statutory]; see *Indiana v. Edwards* (2008) 554 U.S. 164, 175-176, 178 [court may deny request for self-representation where defendant unable to "to carry out the basic tasks needed to present [one's] own defense without the help of counsel" or "suffer[s] from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves"]), he certainly would have been sufficiently competent to decide whether he wanted to waive his right to a jury trial. That being the case, we fail to see why the *Fisher* court opined that the case represented a "paradigm" for why an MDO should *not* be able to decide between a bench and jury trial. In our view, the court's opinion suggests that MDOs are categorically

33

## C. VALIDITY OF COUNSEL'S WAIVER

We consider it helpful at this point to summarize our resolution of the parties' interlocking but opposing claims and our conclusion concerning the meaning of the waiver provision and the scope of counsel's authority. Section 1026.5 does not require an NGI's personal waiver or give counsel exclusive control over the jury decision. Rather, counsel can waive a jury trial at the NGI's direction or with his or her knowledge and consent; and counsel can also do so when the circumstances even over an NGI's objection when the circumstances give counsel reason to doubt the NGI's competence to determine what is in his or her best interests.

With this in mind, we note the "well established rule in this state that 'an appellate court will never indulge in presumptions to defeat a judgment. It will never presume that an error was committed, or that something was done or omitted to be done which constitutes error. On the contrary, every intendment and presumption not contradicted by or inconsistent with the record on appeal must be indulged in favor of the orders and judgments of superior courts.' [Citation.]" (*Walling v. Kimball* (1941) 17 Cal.2d 364, 373, italics added; accord, *Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 261; *People v. Giordano* (2007) 42 Cal.4th 644, 666; see Code Civ. Proc. § 475.) Accordingly, the appellant bears the burden to affirmatively establish error and then demonstrate that it resulted in a miscarriage of justice that requires reversal. (*Cucinella v. Weston Biscuit Co.* (1954) 42 Cal.2d 71, 82; *Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 528; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 105-106; *Thompson v. Thames* (1997) 57 Cal.App.4th 1296, 1308; see 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 355, p. 409 [presumption of correctness; "error must be affirmatively shown"].)

---

incompetent to do so. As noted, however, the Supreme Court in *Barrett* rejected that simplistic view.

34

Here, the record is silent concerning whether defendant was in fact aware of his right to a jury trial in this proceeding and whether he knew about, directed, authorized, or objected to counsel's waiver. Under the circumstances, defendant cannot possibly satisfy his burden to show that counsel's waiver was invalid and therefore that the court erred in conducting a bench trial.

Nor could defendant establish that the court's alleged errors in accepting counsel's waiver and conducting a bench trial were prejudicial. It is settled that the denial of the statutory right to a jury trial is subject to harmless-error review under the *Watson* test. (*People v. Epps* (2001) 25 Cal.4th 19, 29.) Thus, even if the record established that counsel's waiver was invalid, our previous analysis and conclusion that the failure to advise was harmless would apply with equal force to the denial of a jury trial. Simply put, given testimony at defendant's trial, we do not find it reasonably probable a jury would have returned a more favorable verdict. (E.g., *People v. Cosgrove* (2002) 100 Cal.App.4th 1266, 1276 [given evidence, denial of statutory right to MDO trial harmless].)

## VIII. PROTECTING THE RIGHT TO A JURY TRIAL

Given the defendant's burden on appeal, the appellate rules and presumptions, and our *Watson* harmless-error analysis, one could argue that it was unnecessary for us to address the merits of the parties' competing claims of personal waiver and exclusive control. (Cf. *Strickland v. Washington* (1984) 466 U.S. 668, 697 [where defendant cannot show that counsel's allegedly deficient conduct was prejudicial, court need not determine if it was deficient]; *People v. Fairbank* (1997) 16 Cal.4th 1223, 1241 [same].) However, we consider it important to address and resolve them.

First, we continually see appeals from MDO and NGI commitment orders where, as here, there was a bench trial; and where, because of the court's custom and practice of obtaining jury waivers during an unreported discussion in chambers, the record does not

35

reflect counsel's express waiver and is silent concerning whether the defendant knew of the right to jury, and if so, whether the defendant knew about, directed, consented to, or objected to counsel's waiver. Moreover, in these appeals, the defendants and the Attorney General assert the same claims.

Next, we note that the United States Supreme Court has repeatedly recognized that civil "commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." (*Foucha v. Louisiana* (1992) 504 U.S. 71, 79.) "Moreover, it is indisputable that involuntary commitment to a [psychiatric] hospital after a finding of probable dangerousness to self or others can engender adverse social consequences to the individual. Whether we label this phenomen[on] 'stigma' or choose to call it something else is less important than that we recognize that it can occur and that it can have a very significant impact on the individual." (*Addington v. Texas* (1979) 441 U.S. 418, 425-426; *People v. Allen* (2007) 42 Cal.4th 91, 98.)

Given the similar liberty and dignity interests implicated in an involuntary commitment, the right to choose the trier of fact is no less valuable to an NGI than it is to a criminal defendant. Moreover, although no constitutional provision guarantees an NGI the right to a jury trial, the Legislature nevertheless considered the right important enough to require a judicial advisement and a jury trial unless validly waived.

In our view, the purpose of these mandates is frustrated and the statutory right to a jury trial is undermined when together, an opaque record, the procedural rules and presumptions on appeal, and the harmless-error test not only permit a reviewing court to say, in essence, that we need not know and it does not matter, whether the NGI was aware of the right to a jury trial or whether the right was validly waived.

We have addressed and resolved the parties' competing claims because we believe that compliance with the statutory mandates matters even where, as here, the alleged failure to comply with the statute and denial of a jury trial can be deemed harmless.

36

Moreover, in our view, the best assurance of compliance is a record that reflects it. Accordingly, we hold that if the court conducts a bench trial and the NGI did not personally waive the right to a jury, the record must show that the court advised the defendant of the right to a jury or, if the court was unable to do so, that the defendant was made aware of the right *before* counsel waived it. The record must also show that in waiving a jury trial, counsel acted at the defendant's direction or with the his or her knowledge and consent or that there were circumstances supporting counsel's doubt concerning the defendant's capacity to determine what was in his or her own best interests.

Demanding a clear and explicit record concerning the statutory advisement and waiver requirements imposes little, if any, additional burden on the court and parties. What slight burden it might impose is clearly outweighed by the importance the Legislature has attached to an NGI's right to a jury trial and the statutory requirements designed to protect it. In this regard we note that the court may still resolve the jury issue in accordance with its custom and practice. At some point, however, the court and parties must state on the record the facts establishing the NGI's awareness of the right to a jury and the validity of counsel's waiver. Alternatively, the record must contain an advisement and waiver form signed by the NGI.

## VIII. DISPOSITION

The order extending defendant's NGI commitment is affirmed.

_____
RUSHING, P.J.

I CONCUR:

_____
GROVER, J.

ELIA, J., Concurring

I respectfully concur in the judgment on the ground that no reversible error has been shown. (Cal. Const., art. VI, § 13; *People v. Watson* (1956) 46 Cal.2d 818, 836.) We must presume for purposes of this appeal that appellant's counsel waived appellant's right to a jury in accordance with appellant's informed consent (see maj. opn., *ante*, p. 2). (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [all presumptions are indulged to support a lower court judgment or order regarding matters as to which the record is silent; error must be affirmatively shown]; see also *Conservatorship of John L.* (2010) 48 Cal.4th 131, 151-152 [attorney is obligated to keep client fully informed of proceedings, to advise client of his rights, and to refrain from any act or representation that misleads the court].)

It is unnecessary in this case to decide the exact extent of a counsel's authority to waive a jury for trial on a petition for extended commitment pursuant to Penal Code section 1026.5, subdivision (b). As the U.S. Supreme Court stated: "The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." (*Mills v. Green* (1895) 159 U.S. 651, 653 [16 S.Ct. 132]; see *Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541.)

"It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court." (*Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.* (1999) 19 Cal.4th 1182, 1195.) "An appellate decision is not authority for everything said in the court's opinion but only 'for the points actually involved and actually decided.' [Citations.]" (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 620.) "[O]nly the ratio decidendi of an appellate opinion has precedential effect [citation.] . . . ." (*Trope v. Katz* (1995) 11 Cal.4th 274, 287.) Since the full scope of

counsel's control over waiver of jury trial was not at issue in this case, the majority's opinion is largely dicta.

The majority in effect attempts to impose new rules of procedure regarding jury trial waiver on the lower courts. (Cf. *People v. Blackburn* (2013) ___ Cal.App.4th ___ [2013 WL 1736497] (opn. of Rushing, P.J.).) It is not apparent that appellate courts enjoy general supervisory authority over superior courts' practice and procedure. "The judicial power of this State is vested in the Supreme Court, courts of appeal, and superior courts, all of which are courts of record." (Cal. Const., art. VI, § 1.) The California Constitution makes the Judicial Council, which is chaired by the Supreme Court's Chief Justice, responsible for adopting "rules for court administration, practice and procedure . . . " not "inconsistent with statute." (Cal. Const., art. VI, § 6, subd. (d); see Cal. Rules of Court, rule 10.1.)

By statute, "[e]very court may make rules for its own government and the government of its officers not inconsistent with law or with the rules adopted and prescribed by the Judicial Council." (Gov. Code, § 68070; see Code Civ. Proc., § 575.1 [promulgation of local court rules].) The Legislature has encouraged the "Judicial Council . . . to adopt rules to provide for uniformity in rules and procedures throughout all courts in a county and statewide." (Gov. Code, § 68070, subd. (b).)

Some of the powers of courts are set out by statute. (See e.g. Code Civ. Proc., §§ 128, subd. (a) [courts' powers], 177 [judicial officers' powers].) Code of Civil Procedure section 187 provides: "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code."

2

"Courts have inherent power, as well as power under section 187 of the Code of Civil Procedure, to adopt any suitable method of practice, both in ordinary actions and special proceedings, if the procedure is not specified by statute or by rules adopted by the Judicial Council." (*Tide Water Associated Oil Co. v. Superior Court of Los Angeles County* (1955) 43 Cal.2d 815, 825, fn. omitted.) " 'In addition to their inherent equitable power derived from the historic power of equity courts, all courts have inherent supervisory or administrative powers which enable them to carry out their duties, and which exist apart from any statutory authority. [Citations.] . . .' [Citation.]" (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967.)

The majority has cited no cases indicating that a Court of Appeal has inherent authority to impose procedural rules on inferior courts. Moreover, this court is bound by the constitutional standard of reversible error regardless whether the majority's judicially-imposed rules are followed in future cases. I can endorse the majority's new rules as nonbinding, recommended practices to the extent they avoid unnecessary appeals but not as procedural rules controlling local courts.

_____

ELIA, J.

3

Trial Court: Santa Clara County
Superior Court No.: 205026


Trial Judge: The Honorable Gilbert T. Brown


Attorney for Defendant and Appellant
Dawn Quang Tran:

Carl A. Gonser
under appointment by the Court of
Appeal for Appellant


Attorneys for Plaintiff and Respondent
The People:

Kamala D. Harris
Attorney General

Dane R. Gillette,
Chief Assistant Attorney General

Gerald A. Engler,
Senior Assistant Attorney General

Laurence K. Sullivan,
Supervising Deputy Attorney General

Catherine A. Rivlin,
Supervising Deputy Attorney General

4