[No. B168083. Second Dist., Div. Six. Jan. 8, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
GRANT POWELL, Defendant and Appellant.

## COUNSEL

Jean F. Matulis, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Jeffrey B. Kahan and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**YEGAN, J.**—Grant Powell appeals from an order extending his commitment to a state hospital pursuant to Penal Code section 1026.5,[1] which authorizes extended commitment for treatment of a person found not guilty of a felony by reason of insanity (§ 1026). Appellant unsuccessfully claims that the trial court erroneously denied his request for jury trial and that he was denied the right to attend trial and present evidence. We affirm and hold that counsel may waive jury trial over objection of his or her client in a "not guilty by reason of insanity" commitment extension trial (hereafter, extension trial).

### Facts and Procedural History

In 1969 appellant went to a judge's home and attempted to kill him. Appellant exchanged gunfire with a police officer, shot the officer four times, and fled in a vehicle that he commandeered at gunpoint. Appellant was found not guilty by reason of insanity (NGI) and was committed to a state hospital.

In 1980, appellant attacked a hospital psychiatrist with a steel mop. Appellant was prosecuted for assault with a deadly weapon (§ 245, subd. (a)), found NGI, and again committed to a state hospital.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

On January 13, 2003, the district attorney filed a petition to extend appellant's hospital commitment for the fourth time.[2] (§ 1026.5, subd. (b).) Appellant appeared with counsel, stated that he did not want a continuance, and through counsel, waived jury trial.

On April 21, 2003, appellant appeared for trial and demanded a jury. The trial court denied the request on the ground that he had already waived jury. Appellant responded: "No, I did not waive jury. . . . I didn't waive jury at all. My spokesman [i.e., attorney] did." Appellant was belligerent and argued with the court. He was ordered removed from the courtroom and told that he could come back when he behaved himself and "felt better." The trial proceeded in appellant's absence.

Appellant has suffered and continues to suffer from a serious mental disorder and poses a substantial physical danger to others. A clinical psychologist, Michael Selby, Ph.D., testified that appellant suffered from paranoid schizophrenia, was violent, and believed that people of the Jewish faith and authority figures, such as judges, should be killed.

*Jury Waiver*

■ Section 1026.5, subdivision (b) provides that a two-year recommitment may be ordered where the trier of fact finds that the NGI committee poses a substantial risk of physical harm to others as a result of a mental disease, defect, or disorder. Section 1026.5, subdivision (b) states in pertinent part: "(4) . . . The trial shall be by jury unless waived by both the person and the prosecuting attorney. . . . [and] [¶] . . . . [¶] (7) The person shall be entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings. All proceedings shall be in accordance with applicable constitutional guarantees."

■ Appellant contends that the right to jury trial, like jury trial in a criminal case, must be personally waived. (See Cal. Const., art. I, § 16 [jury in criminal case must be waived "by the defendant and the defendant's counsel"].) An extension trial, however, is civil in nature and directed to treatment, not punishment. (*People v. Wilder* (1995) 33 Cal.App.4th 90, 99 [39 Cal.Rptr.2d 247]; *People v. Superior Court (Williams)* (1991) 233 Cal.App.3d 477, 485 [284 Cal.Rptr. 601].) "[A]lthough many constitutional protections relating to criminal proceedings are available in extension proceedings, the application of all such protections is not mandated by section

---

[2] We have affirmed three prior commitment extensions in nonpublished opinions. (*People v. Powell* (July 23, 2002, B150838), *People v. Powell* (April 10, 2000, B132488), and *People v. Powell* (July 16, 1997, B107070).) Pursuant to Evidence Code sections 459 and 452, subdivision (d)(1), we take judicial notice of these unpublished opinions.

1026.5. The statutory language merely codifies the application of constitutional protections to extension hearings mandated by judicial decision." (*People v. Superior Court* (*Williams*), at p. 488.) ██ Notwithstanding section 1026.5, subdivision (b), the following constitutional rights have been held not applicable in a "not guilty by reason of insanity" commitment extension trial: 1. ex post facto, 2. privilege against self-incrimination, and 3. double jeopardy. (*Id.*, at p. 488.) We add to this list the personal waiver of jury trial.

██ An insane person who is "a substantial danger of physical harm to others" (§ 1026.5, subd. (b)(1)) should not be able to veto the informed tactical decision of counsel. We do not deny the right to jury trial for such a person. We only limit the manner in which it may be invoked or waived.

Appellant has twice been adjudged to be insane and state hospital doctors have never indicated that he has regained his sanity. He seeks release so that he can kill people. Can such a person intelligently invoke or waive the right to jury trial? Is such a person competent to meaningfully understand who should make the determination of whether his commitment should be extended?

Common sense dictates that appellant should not be able to veto his attorney's decision to waive jury. The record demonstrates that appellant was suffering from a severe mental disorder. On the day of the purported demand for jury, appellant was medicated, experiencing mood swings, and was so belligerent and disruptive that he had to be removed from the courtroom.

In *People v. Angeletakis* (1992) 5 Cal.App.4th 963 [7 Cal.Rptr.2d 377], the defendant was charged with felony assault, found NGI, and committed to a state hospital. At the extension trial, defendant made a section 1368 motion to determine his present mental competence to stand trial. The Court of Appeal held that the extension trial was civil in nature. Because defendant had been committed for treatment based on a prior NGI finding, there was no due process requirement that he be mentally competent to stand trial. (*Angeletakis*, at p. 970.)

██ *Angeletakis* can only be read for the principle that a NGI committee who is not mentally competent *must act* through counsel. If the person is not competent to waive jury at the extension trial, his or her attorney may waive jury on his or her behalf. That is the case here. The trial court stated: "Mr. Powell, on previous occasions, has been pretty much near catatonic. On a couple of occasions, he just sat in a wheelchair. . . . [¶] . . . [¶] I think what happens is the hospital changes his medications so that at the time of the hearing he knows more of what's going on."

Even if we were to assume that appellant experienced a brief period of lucidity because of a change in medication, the trial court did not err in

finding that he had previously waived jury through his attorney. The right to jury trial is analogous to a mentally disordered offender proceeding (MDO; § 2960 et seq.) The MDO statute states in pertinent part: "The trial shall be by jury unless waived by both the person and the district attorney." (§ 2966, subd. (b).)

In *People v. Otis* (1999) 70 Cal.App.4th 1174 [83 Cal.Rptr.2d 326], we held that jury in an MDO proceeding may be waived by counsel. "Section 2966 concerns persons who have been found by the Board of Prison Terms to be mentally disordered. The Legislature must have contemplated that many persons, such as Otis, might not be sufficiently competent to determine their own best interests. There is no reason to believe the Legislature intended to leave the decision on whether trial should be before the court or a jury in the hands of such a person. That the Legislature specified a waiver of time could be by the petitioner 'or his or her counsel' does not lead us to conclude in the context of this statute that the petitioner must personally waive a jury." (*Id.*, at p. 1177.)

An extension trial, like an MDO proceeding, is civil in nature. The Legislature, in enacting section 1026.5, did not say that the jury waiver must be "personally" made by the NGI committee. (See *People v. Otis, supra,* 70 Cal.App.4th at p. 1176; see also *People v. Masterson* (1994) 8 Cal.4th 965, 969 [35 Cal.Rptr.2d 679, 884 P.2d 136] [counsel may waive jury over defendant's objection in a section 1368 competency proceeding].)

 Because the jury does not impose criminal punishment and has no power to determine the extent to which the person will be deprived of his or her liberty, a waiver of jury trial through counsel does not violate the person's constitutional right to jury trial. (E.g., *People v. Tilbury* (1991) 54 Cal.3d 56, 69–70 [284 Cal.Rptr. 288, 813 P.2d 1318] [NGI committee has no right to jury trial on outpatient placement determination]; *People v. Vera* (1997) 15 Cal.4th 269, 277–278 [62 Cal.Rptr.2d 754, 934 P.2d 1279] [deprivation of section 1025 right to jury trial of prior prison term allegations does not implicate state or federal constitutional right to jury trial].) We reject the argument that the jury waiver was ineffective or violated appellant's due process rights.

### Right to Attend Trial and Present Evidence

Appellant contends that the trial court, in ordering appellant removed from the courtroom, violated his right to be present at trial and offer evidence. The trial court stated that appellant was "not present at the trial because I found him disruptive, uncooperative, and unable to participate in the process. [¶] Had he been of a mind to testify, there's no reason to believe he would have

aided in his request to be released based on what he said in court. So I don't think he was denied his right to testify unduly. [H]e . . . was unwilling to cooperate and was disruptive."

■ It is settled that a defendant who is removed from the courtroom for disruptive conduct waives his constitutional right to be personally present at a criminal trial. (*Illinois v. Allen* (1970) 397 U.S. 337, 343 [25 L.Ed.2d 353, 359, 90 S.Ct. 1057]; *People v. Medina* (1995) 11 Cal.4th 694, 738 [47 Cal.Rptr.2d 165, 906 P.2d 2].) ■ Section 1043 "provides that an *unduly disruptive* defendant, after being warned, may be removed from the courtroom until he 'reclaims' his right to be present by expressing his willingness to conduct himself properly. (See *id.*, subds. (b)(1) & (c).) This provision fully justified the court's exclusion orders in this case. [Citations.]" (*People v. Medina, supra*, 11 Cal.4th at p. 738.) This rule, of necessity, applies to a "not guilty by reason of insanity" commitment extension trial.

Appellant made no offer of proof concerning what evidence might have been presented had he attended the trial. He claims that he would have called "psych techs" and a police officer to testify but there is no reason why counsel could not have called the witnesses in appellant's absence. The trial court found that the testimony of "psych techs" was "unlikely to change the outcome [of] the case . . . because the issue's whether he has a severe mental disorder or a mental defect or disease and whether he's a danger. The dangerousness part is not necessarily subject to a psychiatrist's or psychologist's opinion, but certainly the [mental] defect is. [¶] The same is probably true of the police officer['s testimony] . . . ."

■ Even if we were to assume that the trial court erred in ordering appellant removed from the courtroom, we are convinced beyond a reasonable doubt that the order did not prejudice appellant. (E.g., *People v. El* (2002) 102 Cal.App.4th 1047, 1050 [126 Cal.Rptr.2d 88].) The evidence was uncontroverted that appellant suffers from a mental disorder and represents a substantial danger of physical harm to others. Despite treatment with a wide variety of psychotropic medicines, he has committed numerous acts of violence and continues to threaten people. His most recent act of violence was a February 6, 2003 attack on a fellow hospital patient. Appellant told Doctor Selby and hospital staff that he needed to get out and kill people. Doctor Selby stated that appellant is unlikely to take prescribed medication if released and even with medication, "he continues to act out violently."

*Conclusion*

Appellant received a fair trial. The case is fact-driven and even if we were to rule in appellant's favor on all contentions, we could say, to a virtual certainty, that no different result would obtain in a new trial.

The judgment (order extending appellant's commitment) is affirmed.

Gilbert, P. J., and Perren, J., concurred.

A petition for a rehearing was denied January 23, 2004, and appellant's petition for review by the Supreme Court was denied March 30, 2004. Kennard, J., was of the opinion that the petition should be granted.