[No. F050822. Fifth Dist. Oct. 24, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
JEFFREY DEAN GIVAN, Defendant and Appellant.

## COUNSEL

S. Lynne Klein, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Kelly C. Fincher, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GOMES, J.**—After a finding of not guilty by reason of insanity of two felonies and one misdemeanor and an ensuing commitment to the State Department of Mental Health (DMH), Jeffrey Dean Givan waived a hearing on the district attorney's request for a two-year extension of treatment. He now appeals from the judgment (order of commitment) on two grounds, both of which involve the adequacy of his waiver. We will affirm the judgment.

## BACKGROUND

On October 25, 1989, the district attorney charged Givan with two counts of assault with a deadly weapon (one a knife, the other a razor) and one count of resisting arrest. (Pen. Code, §§ 148, subd. (a)(1), 245, subd. (a)(1).)[1] On a finding that he was not guilty by reason of insanity, the court committed him to the DMH on July 9, 1990. (§ 1026, subd. (a).) Initially admitted to Atascadero State Hospital (ASH), he went on outpatient status in the conditional release program but on revocation of his outpatient status he was readmitted to ASH, then transferred from ASH to Patton State Hospital (PSH), and finally transferred from PSH to Napa State Hospital (NSH).

---

[1] All statutory references are to the Penal Code.

On February 8, 2006, the district attorney filed a petition alleging that Givan had a severe mental disorder that could not be kept in remission without continued treatment and that he would represent a substantial danger to others if released and, on that basis, requesting that the court hold a civil extension hearing and order a two-year extension of treatment. (§ 1026.5, subd. (b).) NSH documents attached to the petition summarized his history of assaultive behaviors, polysubstance dependence, and long-standing diagnosis of schizoaffective disorder, bipolar type. In June of 2005, he "started to decompensate, becoming verbally and physically hostile," and after his transfer from an open unit to a locked unit at NSH several incidents ensued in which he "became very angry, threatening physical harm to others." After threatening to hurt someone if not allowed to go out to smoke and after slapping someone else on the mouth, he was placed in locked seclusion and smeared feces on the window there. Repeatedly he was put into physical restraints, once after threatening staff, again after throwing coffee at a staff member, and later after cutting the neck of another resident with the broken end of a radio antenna and threatening to kill him. He was placed in locked seclusion again after threatening another physical assault.

Givan's treatment team at NSH opined that he represented a substantial danger of physical harm to others due to mental disease, defect, or disorder and recommended that the court extend his maximum term of commitment by two years. (§ 1026.5, subd. (b).) After Givan waived his rights and agreed to a two-year extension, the court ordered the relief the petition sought and ordered him committed again to NSH on May 18, 2006.

## ISSUES ON APPEAL

First, Givan argues that the court erred by allowing him to waive his rights without requiring a personal appearance to do so. Second, he argues that his waiver of his rights is invalid since there is no evidence in the record of his knowledge or his waiver of his right to trial by jury.

## DISCUSSION

### 1. *Personal Appearance*

Givan argues that the court erred by allowing him to waive his rights without requiring a personal appearance to do so. The Attorney General argues the contrary.

Originally, the court calendared the petition for March 9, 2006, and issued an order for Givan's transportation, but at his attorney's request the court calendared the matter for March 30, 2006, canceled the transportation order, and issued a new transportation order. On March 23, 2006, his attorney asked the court to cancel the new transportation order on the grounds that Givan was "anxious to remain" in Napa due to "separate charges based on an incident that took place in the hospital there in Napa in superior court," that Givan had agreed to waive his right to trial, had agreed to the two-year extension, and had faxed a signed declaration to that effect, and that he and his Napa attorney had "both asked [him] to make sure that he doesn't come here or else he's going to miss important dates there." The court conditioned a grant of relief on receipt of his original declaration.

In his original declaration, filed not long afterward, Givan acknowledged that he had had an "adequate opportunity" to discuss his case, his rights, and his options with reference to the NSH recommendation of a two-year extension of treatment. He "freely" and "voluntarily" waived his rights to have a hearing in court on the allegations in the petition; to appear in person at the hearing; to see, hear and question witnesses at the hearing; to subpoena witnesses at the hearing; and to present a defense at the hearing. He requested that his attorney "be allowed to appear on [his] behalf" to present his waivers to the court and agreed to a two-year extension of treatment to April 30, 2008. Finding Givan had "knowingly and voluntarily and intelligently" waived his rights, the court ordered the agreed two-year extension of treatment and his recommitment to NSH on May 18, 2006.

Conspicuous by omission from section 1026.5 is the Legislature's imposition of any requirement of a personal appearance to waive one's rights. Congruently, and with commendable candor, Givan acknowledges that he is aware of no case imposing any such requirement. Nor are we. Nonetheless, by analogy to the requirement of a personal appearance to waive one's rights in a felony proceeding, he suggests that we impose a like requirement in a civil extension hearing. However, a civil extension hearing is a civil, not a criminal, proceeding, for which the purpose is treatment, not punishment, and at which the courts, under a grant of authority by the Legislature, designate the applicable rights. (*In re Anthony C.* (2006) 138 Cal.App.4th 1493, 1513 [42 Cal.Rptr.3d 370]; *People v. Powell* (2004) 114 Cal.App.4th 1153, 1157–1158 [8 Cal.Rptr.3d 441] (*Powell*); *People v. Superior Court* (*Williams*) (1991) 233 Cal.App.3d 477, 488 [284 Cal.Rptr. 601] (*Williams*); § 1026.5, subd. (b)(7).)

Relying on a case in which the United States Supreme Court rebuffed a due process challenge to termination of Social Security disability benefit payments without a prior evidentiary hearing, Givan nonetheless suggests we apply the high court's analysis of how the "identification of the specific dictates of due process generally requires consideration of three distinct factors," first, "the private interest that will be affected by the official action," second, "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and, third, "the Government's interest." (*Mathews v. Eldridge* (1976) 424 U.S. 319, 335 [47 L.Ed.2d 18, 96 S.Ct. 893].)

Applying that analysis, we note that the record here shows scrupulous deference to Givan's interests. He, not the prosecutor, sought to waive his personal appearance on the petition to avoid missing court dates on charges pending against him in Napa County. The court carefully deferred a ruling until after receipt of his original declaration showing his knowing, voluntary, and intelligent waiver of numerous rights. Nothing in the record shows, let alone intimates, that his personal appearance on the petition either would have changed the outcome or would have better served his interests or those of the prosecutor in any way at all. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." (*Morrissey v. Brewer* (1972) 408 U.S. 471, 481 [33 L.Ed.2d 484, 92 S.Ct. 2593].) The long and the short of Givan's request for relief is his mere analogy, standing alone, to the requirement of a personal appearance to waive one's rights in a felony proceeding. That fails to persuade us to impose a like requirement in a civil extension hearing.

### 2. *Trial by Jury*

Givan argues that his waiver of his rights is invalid since there is no evidence in the record of his knowledge or his waiver of his right to trial by jury. The Attorney General agrees that no evidence is in the record of Givan's knowledge or waiver of his right to trial by jury but argues that there was no error and that error, if any, was harmless.

■ The right to trial by jury at a civil extension hearing is statutory, not constitutional. (See § 1026.5, subd. (b)(3), (4).) Like the protections of the double jeopardy clause and the ex post facto clause, the requirement of a personal waiver of the right to trial by jury has no application in a civil extension hearing. (*Powell, supra*, 114 Cal.App.4th at pp. 1157–1158; *Williams, supra*, 233 Cal.App.3d at p. 488.) Likewise, "an insane person who is 'a substantial danger of physical harm to others' " has no right to veto his or her attorney's waiver of the right to trial by jury in a civil extension hearing. (*Powell, supra*, at p. 1158.)

■ Here, Givan and his attorney in Napa County both instructed his attorney in Fresno to obviate the need for his personal appearance in Fresno so he could "remain" at NSH and not "miss important dates" on his pending charges in Napa. His attorney in Fresno not only communicated those representations to the court in Fresno but also represented that Givan "personally" instructed him that he "make sure that he doesn't come here." On that record, a waiver of his right to trial by jury is necessarily implicit. "We do not deny the right to jury trial for such a person. We only limit the manner in which it may be invoked or waived." (*Powell, supra,* 114 Cal.App.4th at p. 1158.)

■ "Due process has often been characterized as an elusive concept which calls for such procedural protections as the particular situation demands. It requires the weighing of the interests of the parties involved and, to be workable, it must be plentifully laced with pragmatic consideration." (*In re Morales* (1974) 43 Cal.App.3d 243, 246 [117 Cal.Rptr. 645].) Even were we to reverse the judgment and order a remand for Givan to waive or not waive his right to trial by jury, we still could not possibly turn back the hands of time and find out, any better than we can by reviewing the record before us, just what was on his mind with reference to his right to trial by jury over a year and a half ago. And that would not even necessarily resolve the issue before us since in a civil extension hearing he has no right to veto his attorney's waiver of the right to trial by jury. Would the court on remand also have to find out just what was on the minds of both his Napa attorney and his Fresno attorney with reference to his right to trial by jury over a year and a half ago?

On the law and the record, the notion of reversing the judgment and ordering a remand "smacks too much of the alleged practice of medieval monks sitting around their cells endlessly debating how many angels could sit on the head of a pin." (*In re Morales, supra,* 43 Cal.App.3d at p. 252, fn. 5.) So we choose the pragmatic path, construe the record as showing an implicit waiver of Givan's right to trial by jury, and note the passage of about a year and a half of the two-year extension of treatment at issue here.[2]

---

[2] For want of a showing that Givan is similarly situated in his civil extension hearing to a person in a felony proceeding, we reject out of hand his equal protection theory of relief. (Compare *In re Brian J.* (2007) 150 Cal.App.4th 97, 124–127 [58 Cal.Rptr.3d 246] with *People v. Alvas* (1990) 221 Cal.App.3d 1459, 1463–1464 [271 Cal.Rptr. 131]; see generally *People v. Crosswhite* (2002) 101 Cal.App.4th 494, 501–507 [124 Cal.Rptr.2d 301].)

## DISPOSITION

The judgment is affirmed.

Vartabedian, Acting P. J., and Dawson, J., concurring.

Appellant's petition for review by the Supreme Court was denied February 13, 2008, S158680.