Filed 12/10/15  P. v. Thomas CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H041855 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 78748) |
| v. | |
| FRANK HILL THOMAS | |
| Defendant and Appellant. | |

In 1983, Frank Hill Thomas was found not guilty of a felony (former Pen. Code, § 288, subd. (b))[1] by reason of insanity (NGI) and committed to a state hospital.[2]

In this appeal, which follows a court trial, Thomas challenges a December 2, 2014 order extending his NGI commitment under section 1026.5, subdivision (b).  He raises two issues, one of which is dispositive in this case—namely, that he was improperly denied his right to a jury trial.[3]

_____

[1] All further statutory references are to the Penal Code unless otherwise specified.

[2] We have taken judicial notice of *People v. Thomas* (May 6, 2010, H034006) [nonpub. opn.] wherein Thomas challenged a March 5, 2009 order extending his NGI commitment under section 1026.5, subdivision (b), following a court trial.  We have also take judicial notice of appellant's appeals from prior orders of commitment (*People v. Thomas* (May 11 2012, H036517) [nonpub. opn.], *People v. Thomas* (Apr. 14, 2014, H039417 [nonpub. opn.]) in which he challenged the lack of a jury trial.  (See Evid. Code, §§ 452, subd. (d), 459.)

[3] Thomas's other issue concerns the use of his testimony in the current commitment extension hearing from a prior commitment extension hearing, wherein he was called to testify in the prosecution's case-in-chief.

*Background*

A criminal defendant who pleads NGI and who is found legally insane at the time of the offense may be committed to a state medical facility for a period as long as the maximum sentence that could have been imposed for the underlying offense. (§ 1026.5, subd. (a)(1).) At least 180 days before the commitment term expires, the facility's medical director must submit an opinion to the prosecuting attorney advising whether the defendant represents a "substantial danger of physical harm to others" due to a "mental disease, defect, or disorder." (§ 1026.5, subds. (b)(1), (2).) In turn, the prosecutor may request "supporting evaluations and relevant hospital records." (§ 1026.5, subd. (b)(2).)

Thereafter, the prosecuting attorney may file a petition with the superior court seeking to extend the defendant's commitment by two years. Subdivisions (b)(3) through (b)(7) of section 1026.5 set forth the procedures applicable to a hearing on such a petition. As relevant here, when a petition is filed, "the court shall advise the person named in the petition of the right to be represented by an attorney and of the right to a jury trial" (§ 1026.5 subd. (b)(3)), and "[t]he trial shall be by jury unless waived by both the person and the prosecuting attorney." (§ 1026.5 subd. (b)(4)).

*Proceedings Below*

On December 2, 2014, at the hearing on the prosecutor's petition to extend Thomas's commitment, after the court acknowledged that Thomas was present and dressed out, Thomas's counsel addressed the court.

"MS. STREET: Your Honor, at this time, if I can indicate Mr. Thomas has requested that this matter be set for jury trial and that we are set today for a jury trial based on his request. However, in my discussions with Mr. Thomas, he would like me to make the following request of the Court. [¶] Mr. Thomas, please listen and see if this is accurate, what you have asked me to ask the Court. [¶] Mr. Thomas has asked that if he waives his . . . right to a jury trial, that he would attend the Phase 2 sex offender program, and after doing so, that he would agree to go to the Conditional Release Program,

2

CONREP, and that he wants Your Honor to order that he be accepted into CONREP. And I have indicated—is that accurate, Mr. Thomas?

"[THOMAS]:  Yes.

"MS. STREET:  And I have indicated to Mr. Thomas that I would relay that offer to this Court; that it's my understanding pursuant to the statute, that this Court cannot order CONREP to take Mr. Thomas to the outpatient without a recommendation from—

"[THOMAS]:  I can see CONREP—

"MS. STREET:  And he is adding that he would see CONREP at the state hospital, but that he needs the recommendation of his psychiatrist or the treatment team before such a thing would happen and that this Court cannot circumvent or avoid that process.  [¶]  Is that accurate?  Mr. Thomas, is that why you wanted to waive jury?

"[THOMAS]:  Yes.  Well, coming here not having—this is not a good way to go to the holidays every other two years and ruin my Thanksgiving and Christmas.  They are more or less police.  They are not family.  I believe I don't want to ruin my holidays every two years.  And this is a way where I can program and give them what they want, and the doctor can certify that, but I could see CONREP.  Because he came to the earthquake time, bad time.  I can see him, then the doctors certify it, and I can go on CONREP after I finish the Phase 2 program because that's what they want.  I have been to every other group and I am on my medication.  That's what they want.  So I'm compliant to whatever they are doing, and that's because the time factor, it's been kind of like out there I have missed a lot of court dates and a lot of jury trials because it wasn't taken care of right and I could have won many cases to get out by, you know.  But so we are here, and that's what I really want.

"MS. STREET:  And so at this time, Your Honor, it's my understanding the People have— would articulate that there needs to be a doctor before they would agree to such—I will let Mr. Chakravorty say it himself.

3

"MR. CHAKRAVORTY: Thank you. [¶] I think counsel stated it accurately. I would like to see Mr. Thomas on CONREP. Unfortunately, I don't think we can do it this way. He can get there. It just needs to happen not quite like this.

"MS. STREET: Based on that, I wanted to address the issue of we have Dr. Saini . . . who is the treating doctor, on standby. He is on his way here from Napa State Hospital. [¶] And at this time, Mr. Thomas, do you want to have the ability to—do you understand that Dr. Saini is being called by the prosecutor in this case?

"[THOMAS]: I hear you.

"MS. STREET: Do you want to hear from him to testify today or do you waive your right to hear from him to testify today?

"[THOMAS]: What's the difference? What's the difference?

"MS. STREET: If I can have a moment off the record.

"THE COURT: Yes. Take your time."

After a brief discussion off the record, defense counsel continued.

"MS. STREET: So Mr. Thomas is objecting to the fact that the petitioner, who is the People of the State of California, are going to call D. Saini in their case in chief. He does not wish to have to hear from him. [¶] Is that correct?

"[THOMAS]: No. I want a jury trial.

"MS. STREET: He is indicating that he—my client is indicating he wants a jury trial regarding the ability to hear from Dr. Saini. [¶] You understand that in the course of a jury trial, you would—he would be called as a witness?

"[THOMAS]: Up to them. I'm on my medication. I'm fine. And I do the program pretty well. I am not fighting any part—I did a sex program. That's all I have got. I was actually in the other—I was actually in Phase 2 in the beginning, but I thought that [it] was not the place to be because I didn't do Phase 1 yet. So I went to Phase 1 in the same time, which is the sex program in Phase 2. So that's my decision that I made to not miss anything on the program. And I'm on my meds and I'm complying as best I

4

can. You know, we had an incident there at Napa that was unusual for human beings to go through that was like, you know, kind of—if you had friends that got hurt or whatever, then you go through the motions. And they are like—staff are like cops when they go back and forth from San Quentin, Napa the same way sort of like.

"MS. STREET: So, sir, the other issue I wanted to address before the Court, our discussion is that you wanted a jury trial for the purpose of telling the jury that you were deprived of your right to a jury trial in your underlying case. [¶] Is that true?

"[THOMAS]: Sure.

"MS. STREET: Is that the reason you have asked for a jury trial today?

"[THOMAS]: No, no, no. Because I want a deal. That's why.

"MS. STREET: You wanted a deal?

"[THOMAS]: Yes. You know, that's unfair. I want a deal. Otherwise we have to take it to trial.

"MS. STREET: And at this point in time, Your Honor, pursuant to *People v. Angelakakis* [*sic*] . . .[4] this is a situation where I cannot accommodate Mr. Thomas's request for such a deal under the statute. I have advised him regarding that. [¶] Pursuant to *People v. Powell* [(2004) 114 Cal.App.4th 1158] . . . at this time I recognize Mr. Thomas has asked for a jury trial, but based on his reasoning for that and the fact that I cannot accommodate his request for waiver of a jury trial—

"[THOMAS]: You said I had a right to a trial within six months. Why can't I come on the TV and certify to CONREP with a writ?

---

[4] We assume that counsel was referring to *People v. Angeletakis* (1992) 5 Cal.App.4th 963 (*Angeletakis*). In *Hudec v. Superior Court* (2015) 60 Cal.4th 815 (*Hudec*), the California Supreme Court held that an NGI committee could not be compelled to testify at a recommitment hearing. (*Id*. at p. 818.) The *Hudec* court specifically disapproved *Angeletakis*. (*Id*. at p. 828, fn. 3.)

5

"MS. STREET: Let's just say—so, sir, you are saying that rather than have a jury trial, you would like to agree to the extension and have a writ in six weeks—I mean in six months by closed circuit television?

"[THOMAS]: And I would be guaranteed after I finish the program that I go to CONREP.

"MS. STREET: We can't guarantee you go [to] CONREP. That's the problem. The judge can't do that. [¶] If I [could] ask the Court to confirm that my statement of the law is accurate.

"THE COURT: All right. [¶] Thank you, Mr. Thomas. I know what you are saying and requesting in terms of your deal. And so let me just state for the record that Ms. Street confirmed and stated also by Mr. Chakravorty are correct on the law that the Court cannot order and you cannot demand and receive without the whole process being in place including a recommendation and report or evaluation from the treatment team. This takes time to do. It's a whole process. And the Court would have to receive such report and evaluation. So I can't make that order without such a process first. That does not mean it cannot happen. It can. It just needs to go through the whole process.

"[THOMAS]: We have been through that for 31 years. Seems not to be happening.

"THE COURT: Okay.

"MS. STREET: So, Your Honor, at this point, based on the fact that Mr. Thomas is predicating his conditional release—conditional waiver of jury that I can[not] accommodate that, as a matter of law, pursuant to *People v. Powell*, at this time respectfully I would waive jury.

"THE COURT: Based on the totality of the circumstances and hearing everything that's occurring in court, and counsel's representation, and by law, the court accepts the waiver of the jury trial by counsel."

Thomas objected "for the record."

Thereafter, in lieu of the live testimony of Dr. Saini, the prosecution offered into evidence Dr. Saini's report filed on October 17, 2014.[5] The report was admitted on the understanding that the contents of the report were not admitted for the truth, but to support the expert's opinion.

According to Dr. Saini, Thomas is a 59-year-old man who was committed to the Department of Mental Health on February 3, 1983, after he was found NGI on a charge of molesting a 10-year-old girl at knife point. Thomas has been given diagnoses of schizophrenia and pedophilia. Dr. Saini and his colleagues considered Thomas's readiness for community outpatient treatment and were of the opinion that he did not meet the criteria. This view was shared by CONREP. In a report dated 06/09/14, CONREP described Thomas "as not being ready for community outpatient treatment due to his being 'floridly psychotic with loose rambling associations. Mr. Thomas is verbally aggressive and treatment non-compliant. He does not accept that he has a mental illness, denies he committed a sexual offense and insists that he is being held in [Napa State Hospital] illegally through a conspiracy.' "

Thomas testified on his own behalf. He said that currently he was taking his medication. When asked what his psychiatric diagnosis was, Thomas said paranoid schizophrenia. When asked if he agreed with the diagnosis Thomas said, "[n]ot all the time" but "[s]ometimes."

Ultimately, the court concluded that Thomas continued "to represent a substantial danger of physical harm to others and . . . to be a person as described in paragraph one of section 1026.5 of the Penal Code" by "reason of mental disease, defect or disorder."

---

[5] The report was signed by both Dr. Saini, a Staff Psychiatrist at the Department of State Hospitals, and by Kobita Rikhye, a Senior Psychologist. The report was reviewed by Dr. Tyler, the Medical Director.

Accordingly, the court extended his commitment to the Department of State Hospitals from January 23, 2015, to January 23, 2017.

*Discussion*

As noted, under section 1026.5, subdivision (b)(3), when a petition to extend an NGI commitment is filed, the court "shall advise the person named in the petition of the right to be represented by an attorney and of the right to a jury trial." Furthermore, under section 1026.5, subdivision (b)(4) the trial on a petition for extended commitment of an NGI committee must "be by jury unless waived by both the person and the prosecuting attorney."

Thomas argues that he was improperly denied his right to a jury trial when counsel waived jury trial over his objection.

In August 2015, the California Supreme Court decided two cases that are relevant here: *People v. Blackburn* (2015) 61 Cal.4th 1113 (*Blackburn*) and *People v. Tran* (2015) 61 Cal.4th 1160 (*Tran*). In *Blackburn*, the high court was faced with the question of whether a trial court must personally advise a mentally disordered offender (MDO) of his or her right to a jury trial, and whether the trial court must obtain a personal waiver of that right from the offender before conducting a bench trial to extend the MDO commitment. (*Blackburn*, *supra*, at p. 1116.) In the companion case, *Tran,* the question before the court presented a similar rights and waiver issue wherein the extension of an involuntary commitment was preceded by the original commitment after the individual pleaded NGI to a criminal offense. (*Tran*, *supra*, at p. 1163.)

In *Blackburn,* the California Supreme Court held that "the trial court must advise the MDO defendant personally of his or her right to a jury trial and, before holding a bench trial, must obtain a personal waiver of that right from the defendant unless the court finds substantial evidence—that is, evidence sufficient to raise a reasonable doubt—that the defendant lacks the capacity to make a knowing and voluntary waiver, in which case defense counsel controls the waiver decision." (*Blackburn*, *supra*, 61 Cal.4th

8

at p. 1116.) In *Tran*, the court held that a "trial court must advise the NGI defendant personally of his or her right to a jury trial and, before holding a bench trial, must obtain a personal waiver of that right from the defendant unless the court finds substantial evidence that the defendant lacks the capacity to make a knowing and voluntary waiver, in which case defense counsel controls the waiver decision." (*Tran*, *supra*, 61 Cal.4th at p. 1163.)

Acknowledging that civil commitment proceedings involve certain significant deprivations of liberty, and recognizing that not all "constitutional protections available in the criminal context apply" (*Blackburn*, *supra*, 61 Cal.4th at p. 1119) in civil commitment proceedings, the California Supreme Court was careful to distinguish its earlier holding in *People v. Masterson* (1994) 8 Cal.4th 965 (*Masterson*). (*Blackburn*, *supra*, at pp. 1120-1121.) The *Blackburn* court explained that in *Masterson*, the court had held counsel could properly waive a defendant's right to jury trial in a section 1368 proceeding, " 'even over the defendant's objection.' " (*Blackburn*, *supra*, at p. 1120.)

The *Blackburn* court went on to say in *Masterson*, "[W]e began by citing the general proposition that ' "counsel is captain of the ship" ' and has authority to bind the client in procedural aspects of litigation. [Citation.] But we did not rely on that general proposition to resolve the case, nor did we 'decide whether . . . there are some statutory rights that counsel may not waive.' [Citation.] 'Rather,' we said, 'we base our conclusion upon an examination of the nature of competency proceedings as well as the jury trial right at issue.' [Citation.] (*Blackburn*, *supra*, 61 Cal.4th at pp. 1120-1121.)

The *Blackburn* court continued, "In addition to noting that the right to a jury trial in a competency proceeding 'is statutory not constitutional,' we observed in *Masterson* that the applicable statutes neither require an advisement nor address the issue of waiver. [Citation.] We explained: 'The sole purpose of a competency proceeding is to determine the defendant's present mental competence, i.e., whether the defendant is able to understand the nature of the criminal proceedings and to assist counsel in a rational

9

manner.  [Citations.]  Because of this, the defendant necessarily plays a lesser personal role in the proceeding than in a trial of guilt. . . .'  Crucial to our reasoning was the fact that ' "[a] section 1368 hearing is held only after there has been a prima facie showing of mental incompetence." '  [Citations.]  ' "Of necessity, therefore, defendant's attorney must play a greater role in making fundamental choices for him, and cannot be expected to seek approval of strategic decisions made in the course of obtaining and presenting proof of incompetence." '  [Citation.]  [¶]  Thus, *Masterson* focused on the particular statutory scheme and nature of the ' "special proceeding" ' at issue.  [Citation.]  The statutes at issue in *Masterson* make clear that there has already been a prima facie showing of incompetence by the time a defendant faces a competency hearing, and thus it is sensible that counsel's decisions may trump the defendant's.  In resolving the present case, we focus our attention on the statutory scheme for extending an MDO defendant's commitment and on the nature and purpose of those proceedings."  (*Blackburn*, *supra*, 61 Cal.4th at p. 1121.)

The MDO commitment has the dual purpose of protecting the public and treating severely mentally ill offenders.  (*Blackburn*, *supra*, 61 Cal.4th at p. 1122.)  The NGI commitment scheme shares the same purpose.  (*Tran*, *supra*, 61 Cal.4th at p. 1168.)

The *Blackburn* court went on to hold that the relevant statute, section 2972, requires the court to advise the MDO defendant, on the record, of his or her right to a jury trial.  (*Blackburn*, *supra*, 61 Cal.4th at p. 1124.)  Similarly, in *Tran*, the court held section 1026.5, subdivision (b)(3) requires the court to advise the NGI defendant of his or her right to jury trial on the record in a court proceeding.  (*Tran*, *supra*, 61 Cal.4th at pp. 1163, 1166.)

The *Tran* court explained that the text of the advisement in section 1026.5 that " 'the court shall advise the person named in the petition of the right to be represented by an attorney and of the right to a jury trial' " is unambiguous.  (*Tran*, *supra*, 61 Cal.4th at p. 1166.)  Further, the phrase " 'the person *named in the petition* [citation] makes clear to

10

whom the trial court must direct the advisement. And the coupling of 'the right to be represented by an attorney' with 'the right to a jury trial' in section 1026.5(b)(3) indicates that the trial court must advise the NGI defendant personally even if he or she is represented by counsel. Like section 2972, subdivision (a) [the statute at issue in *Blackburn*,] section 1026.5(b)(3)'s advisement provision requires the trial court to advise the defendant on the record in a court proceeding. [Citation.]" (*Ibid.*)

The *Tran* court went on to say, "The waiver provision—'The trial court shall be by jury unless waived by both the person and the prosecuting attorney' (§ 1026.5(b)(4))—immediately follows the advisement provision. When these provisions are read together, it is clear that 'the person' in section 1026.5(b)(4) means 'the person named in the petition' in section 1026.5(b)(3). Moreover, because the purpose of advising a defendant of a particular right is to enable the defendant to make an informed choice about whether to waive that right, the waiver provision is most naturally read to mean that the choice whether to waive a jury trial belongs to 'the person' in the first instance." (*Tran*, *supra*, 61 Cal.4th at p. 1166.)

In *Blackburn*, the court pointed out that "[i]f the Legislature had intended to allow counsel to waive a jury trial notwithstanding the defendant's wishes, it would not have needed to require the trial court to expressly advise the defendant." (*Blackburn*, *supra*, 61 Cal.4th at p. 1125.)

Both courts determined that the relevant statutes allow for waiver by the MDO defendant or the NGI defendant personally, unless there is substantial evidence the defendant lacks the capacity to make a knowing and voluntary waiver. In such a situation, control of the waiver decision belongs to the defendant's counsel, despite the defendant's objection. (*Blackburn*, *supra*, 61 Cal.4th at pp. 1116, 1130; *Tran*, *supra*, 61 Cal.4th at pp. 1163, 1167.)

In both *Blackburn* and *Tran*, neither defendant was advised by the trial court of his right to a jury trial, nor did either defendant personally waive that right. Neither trial

11

court found the defendant lacked the capacity to knowingly and voluntarily waive that right. (*Blackburn*, *supra*, 61 Cal.4th at p. 1116; *Tran*, *supra*, 61 Cal.4th at p. 1163.) Given the errors identified, the high court considered the appropriate remedy. (*Blackburn*, *supra*, at pp. 1132-1138.) It determined "that when a trial court errs in completely denying an MDO defendant the right to a jury trial under section 2972(a), the error requires automatic reversal." (*Id*. at p. 1136.) Similarly, the *Tran* court concluded that in light of "such error—resulting in a complete denial of the defendant's right to a jury trial on the entire cause in a commitment proceeding—" automatic reversal is required. (*Tran*, *supra*, at pp. 1169.)

As relevant to this case, in *Tran*, the court recognized that the rule it announced rejected the rule announced in *People v. Powell*, *supra*, 114 Cal.App.4th 1153—that is, that counsel invariably controls the decision to waive a jury trial in an NGI commitment. (*Tran*, *supra*, 61 Cal.4th at p. 1170.) The *Tran* court went on to say, "[T]he trial court and the parties may have reasonably relied on that prior law in proceeding with a bench trial without making a record of Tran's personal waiver or his inability to make a knowing and voluntary waiver at the time of counsel's waiver. Accordingly, we remand this case to the Court of Appeal with directions to remand to the trial court so that the district attorney may submit evidence, if any, that Tran personally made a knowing and voluntary waiver or that he lacked the capacity to make a knowing and voluntary waiver at the time of counsel's waiver. If the trial court finds by a preponderance of the evidence that Tran made a knowing and voluntary waiver, or if it finds substantial evidence that Tran lacked the capacity to make a knowing and voluntary waiver at the time of counsel's waiver, then the court shall reinstate the extension order. This approach applies to all cases presently on direct appeal where the record does not reveal whether an NGI defendant personally waived his or her right to a jury trial or whether there was

12

substantial evidence that the defendant lacked the capacity to make a knowing and voluntary waiver at the time counsel's waiver." (*Ibid*.)[6]

Based on the record before us, we have no doubt that Thomas did not make a knowing and voluntary personal waiver of his jury trial right. Further, as in *Tran* and *Blackburn*, there is no substantial evidence that Thomas lacked the capacity to make a knowing and voluntary waiver. To the contrary, Thomas demonstrated his ability to make a knowing and voluntary waiver by presenting a "deal" to the court, i.e., if the court were to order him to outpatient conditional release he would give up his right to a jury trial. However, when his attempted "deal" was unsuccessful he asserted his right to a jury trial, which shows that he understood that a waiver would be of no benefit to him. Based on this record, we must reverse the judgment and remand the case to the trial court for further proceedings. (*Tran*, *supra*, 61 Cal.4th at p. 1169 ["error—resulting in a complete denial of the defendant's right to a jury trial on the entire cause in a commitment proceeding—is not susceptible to ordinary harmless error analysis and automatically requires reversal"].)

Although we must remand this case to the lower court for further proceedings, we address Thomas's other issue in order to guide the trial court in the event that Thomas receives the jury trial that he has requested over the last few years.

_____

**[6]** Before oral argument in this matter, we received a letter from the People in which the People "concede that a remand is indicated to allow the District Attorney to submit evidence and the trial court to determine or clarify findings as to whether [Thomas] lacked the capacity to make a knowing and voluntary waiver of a jury, consistent with the *Tran* requirements." We point out that such a remand is required only "where the record does not reveal whether an NGI defendant personally waived his or her right to a jury trial or whether there was substantial evidence that the defendant lacked the capacity to make a knowing and voluntary waiver at the time counsel's waiver." (*Tran*, *supra*, 61 Cal.4th at p. 1170.) Plainly, here the record does reveal that Thomas did not personally waive his right to a jury trial and we have determined, *ante,* that the record supports the conclusion that Thomas demonstrated his ability to make a knowing and voluntary waiver.

In Thomas's recent court trial he objected to the use of his testimony from the prior commitment extension hearing that occurred in 2011. Specifically, Thomas's counsel told the court, "I would indicate for the record that it would not be my intention to advise Mr. Thomas to testify in this matter. He does have a right against self-incrimination. If he were to testify in the context of these proceedings, I would agree that the People could bring that in as [an] admission.[7] But I just want to preserve the right that the People can call Mr. Thomas adversely if he chooses not to testify, that that would not be admissible at that particular time, and we would object to that in that contingency."

The prosecutor persisted, "I agree we would not be able to compel him to testify today at this court trial. However, he testified back in 2011. That I think is a waiver of his Fifth Amendment right back in 2011, so I think that comes in as a party admission, whether or not he testifies today." The court agreed.

In the 2011 commitment extension hearing, the prosecution had called Thomas to testify in its case-in-chief.

Section 1026.5, subdivision (b)(7) provides in pertinent part that a person committed to a state hospital or other treatment facility pursuant to section 1026.5 "shall be entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings. All proceedings shall be in accordance with applicable constitutional guarantees." In *Hudec*, our Supreme Court held that this provision guarantees an NGI committee the "statutory right not to testify at his or her NGI commitment extension

---

[7] At the time of Thomas's 2014 hearing, case law provided that civil committees did not have a right not to testify. (See *People v. Lopez* (2006) 137 Cal.App.4th 1099, 1116 (*Lopez*).) Thus, when the trial court allowed the prosecutor to call Thomas as a witness, the published authority on the question of whether a person could be called to testify against himself in an NGI extension commitment hearing answered that question in the affirmative. The Supreme Court disapproved *Lopez* on this point in *Hudec*, *supra*, 60 Cal.4th at p. 832, fn. 5.

14

hearing.  On its face, the language of section 1026.5(b)(7) provides respondents in commitment extension hearings the rights constitutionally enjoyed by criminal defendants.  One of those rights is the right to refuse to testify in the prosecution's case-in-chief.  [Citation.]  And while the appellate courts have posited a number of restrictions on the rights included under section 1026.5(b)(7), we find that none of those possible restrictions justifies excluding the right not to testify against oneself." (*Hudec*, *supra*, 60 Cal.4th at p. 826.)

Although Thomas voluntarily took the stand in the current commitment extension hearing, he was forced to do so in 2011.  Accordingly, there was no waiver or " 'intentional relinquishment or abandonment of a known right' " (*United States v. Olano* (1993) 507 U.S. 725, 733) such that the prosecution could use that testimony in the current hearing.

Thomas's testimony given at the prior commitment extension hearing was the product of the failure to honor his right not to be called in the prosecution's case-in-chief. The harm thereby done would be condoned, and to that extent that right would be rendered meaningless, if this court were to hold that such testimony was admissible against Thomas at a subsequent commitment extension hearing.

*Disposition*

The judgment is reversed and the matter is remanded for further proceedings.

15

_____

ELIA, ACTING P. J.

WE CONCUR:


_____

BAMATTRE-MANOUKIAN, J.




_____

MIHARA, J.




*The People v. Thomas*
H041855